GEORGE H. DOTY & another *vs.* ARTHUR LYMAN.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    April 1, 1896. — June 9, 1896.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Mandamus — Order of Board of Aldermen not approved by Mayor or returned to that Body — Charter of City — Order conferring Discretion on Mayor.*

If the mayor of the city of Waltham, not having approved an order of the board of aldermen for laying out a street, fails to return it to that body within ten days, under the charter of the city, St. 1893, c. 361, the order is in force.

If an order of the board of aldermen of a city relative to repairing a street is merely an appropriation of a certain sum, with a requirement that it be expended

by the superintendent of streets under the direction of the mayor, a writ of mandamus can only command the mayor to proceed to direct the expenditure upon the designated part of the street in such a way as to him seems best.

THREE PETITIONS, for writs of mandamus to compel the respondent, in his capacity of mayor, to execute certain orders passed by the board of aldermen of the city of Waltham, and alleged to be in full force and effect at the time of the bringing of the petitions. The first petition related to an order for the construction of a concrete sidewalk of given dimensions; the second, to an order laying out and ordering the construction of a new street to be called Fiske Street; and the third, to an order appropriating $1,750 for repairs on Oak Street, so called, all in said city.

It appeared that each of the orders was duly passed by the board of aldermen, and presented to Henry S. Milton, who was mayor of the city in 1895, by the clerk of the board; that Milton never approved any of them, but held them all more than ten days after their presentation to him, and never at any time returned any of them to the board with his objections thereto in writing.

The main question was whether, under the charter of the city, St. 1893, c. 361, orders of this character can, without the mayor's approval, go into full force and effect, so that he can be compelled to execute them. As to the third order, for repairs of Oak Street, the further question was raised, whether it was of such a nature that a writ of mandamus can properly issue to compel the mayor to execute it, even if it be taken to have been legally passed, the language of the order being that " the said sum shall be expended by the superintendent of streets under the direction of the mayor."

The respondent demurred, assigning as ground therefor that by the charter of the city he was not required by law to execute the orders until the same had been approved by the mayor. The cases were, at the request of the parties, reserved by *Morton, J.*, upon the petitions and demurrers, for the consideration of the full court. If the demurrers were overruled, the writs were to issue; if sustained, the petitions were to be dismissed.

*G. L. Mayberry*, for the respondent.

*C. E. Stearns & T. H. Armstrong*, for the petitioners.

KNOWLTON, J.  The St. 1893, c. 361, is the charter of the city of Waltham, and § 24 of this chapter is as follows: " The board of aldermen shall, subject always to the approval of the mayor, have exclusive authority and power to order the laying out, locating anew, and discontinuing of and making of specific repairs in all streets and ways and all highways within the limits of the city; to assess the damage sustained thereby by any person, and, except as herein otherwise provided, to act in matters relating to such laying out, locating anew, altering, discontinuing, or repairing.  Any person aggrieved by the action of the board of aldermen hereunder shall have all the rights and privileges now by law in similar cases allowed in appeals from decisions of selectmen, but there shall be no appeal from a decision not to lay out a way."  By § 57 of the same statute, " the general laws requiring the approval of the mayor to the doings of a city council, or of either branch thereof, and relative to the exercise of the veto power by the mayor of a city," are given " full force, application, and effect in said city."

These general laws are found in Pub. Sts. c. 28, § 6 ; c. 29, § 7.  The principal question in these cases is whether the words " subject always to the approval of the mayor," in the section quoted above, mean subject to his approval in like manner as ordinances, ordinary orders, resolutions, and votes passed in concurrence by both branches of the city council, and orders of either branch involving the expenditure of money, are subject to the approval of the mayor under general laws, or whether they mean subject absolutely to his approval in such a sense that no acts of the board of aldermen in reference to laying out, locating anew, or discontinuing streets or ways, or making specific repairs upon them, can take effect unless the mayor gives them his approval.  The considerations upon the opposite sides of this question are very nearly evenly balanced, but we are inclined to the opinion that the Legislature did not intend by this provision to make the proceedings of the board of aldermen, in regard to these important matters, subject absolutely to the will of the mayor, without requiring him to take formal action in any case, or to do anything more than to indicate his disapproval by his silence.  It is to be observed that the tribunal exercising original jurisdiction in these matters sits in a quasi judicial capacity,

giving hearings, ascertaining facts, and deciding between conflicting interests. In these hearings the mayor in his official capacity takes no part. If the Legislature had intended that the result deliberately reached by the only tribunal having jurisdiction formally to deal with such matters should be a nullity unless the mayor, acting independently, upon his personal and official judgment, should give it his approval, we should probably have found a very clear manifestation of this intention. In no other similar matter can the mayor exercise such power. He is made the chief executive officer of the city, and is given very large powers in his department. St. 1893, c. 361, § 27. But in regard to no other subject is he given any power affecting orders of the board of aldermen, except to give or withhold his approval in the manner and with the consequences stated in Pub. Sts. c. 28, § 6, and c. 29, § 7. We are of opinion that the words "subject always to the approval of the mayor" were inserted to make it clear that all orders of the board of aldermen passed in this department of its business shall be subject to the approval of the mayor in the manner prescribed by the general laws, whether they involve an expenditure of money or not. Without such words it might be doubtful whether the board of aldermen were not made absolute in this field. The orders authorized by § 24 of the statute, considered as a whole, are not well described as orders "involving the expenditure of money." When it has been determined that a way should be located anew according to certain monuments, the order to that effect may or may not involve the expenditure of money. The same is true of an order discontinuing a street. An order laying out a street may not directly involve expenditure, for the street may have been put in perfect condition by individual owners. Even if without these words it might be held that § 57 of the statute made orders of this kind subject to the approval of the mayor in accordance with the provisions of the general laws, the Legislature might well desire to make it certain that the board of aldermen were not to be absolute in this department.

The construction of the statute contended for by the respondent would give the mayor powers partly legislative, and partly judicial, to be exercised in a manner unusual in our system of government. If it had been intended that the mayor should

have a new power in regard to orders under this section, so that his silence should have the effect of an absolute veto and his approval should in every case give an order its first effect, there would probably have been a more definite provision in regard to it, so that at the expiration of a prescribed time it would always be known whether the order was or was not to take effect.

If the words gave the mayor an absolute right to veto by silence, or made each order of the board of aldermen a nullity until it was formally approved by the mayor, they would be at variance with § 57 in their application to orders involving the expenditure of money, which by this section are subject to the general veto power of the mayor that leaves a right in the board of aldermen to pass them by a two-thirds vote, notwithstanding his veto.

The statutes requiring the mayor's approval of certain acts of a city council as a condition precedent to their taking effect are, for the most part, very different from this. See Sts. 1891, c. 370, § 2; 1892, c. 166, § 1; 1894, c. 428, § 6. We have found but one that seems analogous to it, and that relates to a subject much narrower than this. See St. 1892, c. 418, § 5. Language similar to that now under consideration has been used in several other city charters, but in none of them has it received judicial interpretation. See Sts. 1892, c. 324, § 22; c. 355, § 23; 1893, c. 378, § 22; c. 444, § 20; 1894, c. 161, § 21; 1895, c. 148, § 23; c. 302, § 19.

Under our construction of the statute, each of the orders under consideration took effect upon the failure of the mayor to return it to the board of aldermen within ten days after it was presented to him. It therefore became the duty of the mayor to take action under each of them, and, upon the issues made up, a writ of mandamus should issue in each case commanding him to do so. In the case relative to repairs upon Oak Street, inasmuch as the order is merely an appropriation of a certain sum, with a requirement that it be expended by the superintendent of streets under the direction of the mayor, there is such an element of discretion entering into the execution of the order that the writ can only command the mayor to proceed to direct the expenditure upon the designated part of the street in such a way as to him seems best.

*Writs of mandamus to issue.*