## DAVIS et al. v. WOOD et al., Appellants.

### Division One, March 12, 1901.

1. **Witness: COMPETENCY: PARTY TO DEED.** Where the grantee in a deed is dead, the grantor's wife is not a competent witness in behalf of any subsequent grantee, to show that the deed which purports to have been signed by herself and her husband, was not in fact executed by them. As to the execution of a grantor's deed his mouth is closed for all time by the death of his grantee.

2. **Ancient Deed: ADMISSION IN EVIDENCE.** The admissioin of a deed in evidence, after a prima facie case as to its authenticity has been made, does not establish its validity. Its due execution is still a question of fact for the jury.

3. ———: ———: **VALIDITY: ACTION OF GRANTOR.** The deed bore date of 1860, aud purported to bear the signature of the patentee and his wife and to be executed in the presence of a justice of the peace of the county, but there was no certificate of acknowledgment by him. The grantee died in 1863, without having been in possession, and in 1874 the land was partitioned at suit of his heirs, and sold at sheriff's sale, and by the purchaser sold in 1888, and the

Davis v. Wood.

deed was subsequently found in the hands of his grantee, and placed of record in 1894. The signature of the justice who witnessed it was proven with tolerable certainty. The patentee's signature was not susceptible of proof because he signed by mark. But he was present when the sheriff made public sale of the land, and when the purchaser afterwards inquired of him about the title, told him that he had sold it to the person named as grantee in the deed, and a year later he went with said purchaser and pointed out the land's boundary lines to him. At that time and until his death, three years later, he lived in two miles of the land. His estate was duly administered, but no land was inventoried. His widow and children continued to live in the neighborhood of the land, but never informed the administrator that there was any land belonging to the estate, and never were heard to assert any claim to this land. In the meantime, the land was partly cleared, a house was built on it, destroyed by fire and another built. *Held*, that these facts supply all the requirements of the law in reference to the authentication of the ancient deed, and are intelligible only on the theory that the patentee's deed was genuine.

4. ———: ADVERSE POSSESSION: INNOCENT PURCHASER. Parties who acquire land in the adverse possession of others do so with notice of their claim, and hence are not innocent purchasers.

Appeal from Stoddard Circuit Court.—*Hon. Jno. G. Wear,* Judge.

REVERSED.

*Mozley & Wammack* for appellants.

(1) Mrs. Gallaway's deposition was incompetent, and it should have been excluded on appellants' objection to it on that ground, when the respondent offered to read it at the trial. Messimer v. McCray, 113 Mo. 382; Chapman v. Dougherty, 87 Mo. 622; R. S. 1889, sec. 8918; Williams v. Williams, 67 Mo. 661; Wheeler v. Tinsley, 75 Mo. 458; McAllister v. Beams, 35 Mo. App. 668. (2) In view of the recognized presumption of correctness attaching to the acts of public

officials, the proof of forgery of the Holmes deed should have been by a clear and decided preponderance of the evidence. Barrett v. Davis, 104 Mo. 549. (3) If Thomas Gallaway told Bedford that he had conveyed this land to Samuel Holmes on the day of the partition sale and before Bedford purchased the same at said sale, and thereby induced Bedford to purchase the land at said sale, his heirs will not be afterward permitted to deny the truth of the admission, if the consequence of such denial would be to work an injury to Bedford or to some person claiming under him. Bedford v. Tracey, 48 Mo. 325. (a) The doctrine of an estoppel *in pais* applies where a party, having the true title, ascertains subsequent to the sale thereof by a party having no title, that such sale has been made and neglects to give notice of his claim while the property is being improved, to the damage of the purchaser. Kline v. Vogel, 90 Mo. 251. (b) When the principle of the doctrine of an estoppel *in pais* is applied to real estate, it is as effectual as a deed would be from the party estopped. Trustees v. Smith, 118 N. Y. 641. (c) And the heir is bound by the laches of the ancestor, and the grantee by the laches of the grantor. 12 Am. and Eng. Ency. of Law, p 566 and n. 1 and 2; 7 Am. and Eng. Ency. of Law, p. 23 and n. 1; Lyon v. Morgan, 143 N. Y. 505; Trustees v. Smith, 118 N. Y. 641. (4) The statute applying to real actions, when the bar is complete, operates to extinguish the title and right of the one against whom it runs, and not merely as a bar to the action. Sherwood v. Baker, 105 Mo. 472; Long v. Stockyards Company, 107 Mo. 298. (a) Even if the Holmes deed was forged, it was color of title. Sedgwick & Waite's Trial of Title to Land, sec. 780. (b) A mere break in the possession will not arrest the running of the statute. Fugate v. Pierce, 49 Mo. 441; 1 Am. and Eng. Ency. of Law, p. 841, n. 2. (c) It is not necessary to show the notorious character of

adverse possession when the other party has actual notice thereof. Key v. Jennings, 66 Mo. 367; Sedgwick & Waite's Trial of Title to Land, sec. 735; Clark v. Gilbert, 39 Conn. 94; Brown v. Cockrell, 33 Ala. 47. (5) The court erred in refusing the instructions of the appellants. In actions at law tried by the court without a jury, it is just as essential that instructions should be given or refused, in order to enable the appellate court to review the action of the trial court, as it is in like cases tried with the aid of a jury. R. S. 1889, sec. 2188; Altum v. Arnold, 27 Mo. 264; Conran v. Sellew, 28 Mo. 320; Weilandy v. Lemuel, 47 Mo. 322; Mead v. Spaulding, 94 Mo. 43; Krider v. Miller, 99 Mo. 145; Gaty v. Clark, 28 Mo. App. 332. (a) An instruction which, if given to a jury, would be bad as tending to mislead, may be unobjectionable when given merely to indicate the theory on which the court found. Schureman v. Railroad, 7 Mo. App. 570. (b) Where a cause is tried by the court without the intervention of a jury, it is error to refuse an instruction clearly embodying the correct rule of law applicable to the case, though it be somewhat objectionable in form. Scarritt v. Hoenig, 8 Mo. App. 559. Instructions must be considered with reference to the possibilities of their interpretation. State v. Bank, 10 Mo. App. 482. (c) Bad grammar does not vitiate an instruction, if the meaning thereof is not obscured. State v. Smith, 14 Mo. App. 585. (d) In a trial before the court, the same strictness is not required in the instructions as is demanded before a jury. Carpet Company v. Hatton, 55 Mo. App. 320. (e) If the court is not satisfied with the form of an instruction presented to it when it is sitting as the trier of the facts, it should put it in proper form. Walthers v. Railroad, 78 Mo. 617, 622.

*Wilson Cramer* for respondents..

Davis v. Wood.

(1) Not being acknowledged, nor proved as provided by statute in force at the time of its alleged execution (R. S. 1855, p. 358, secs. 16 et seq.), the deed purporting to have been executed by Galloway to Holmes was not admissible in evidence without proof of its execution and was, therefore, properly rejected by the court. R. S. 1889, sec. 2427. (2) It is shown by the evidence of Mrs. Galloway and of John E. Liles, a merchant who had many dealings with Thomas Galloway, that he could not write his name, and always signed instruments of writing by making his mark, yet his name appears in full to the Holmes deed, without cross-mark. (3) The only evidence offered by defendants to show the execution of the deed by Thomas Galloway was the testimony of H. H. Bedford, one of the grantors in their chain of title, who undertook to identify the signature of Henry Kennedy, the subscribing witness. This proof was insufficient. The statute provides: "The proof of the execution of any instrument in writing conveying real estate or whereby any real estate may be affected in law or equity shall be: First, by the testimony of a subscribing witness, or, second, when all of the subscribing witnesses are dead, or can not be had, by the evidence of the handwriting of the party, and of at least one subscribing witness, given by at least two credible witnesses to each signature." R. S. 1889, sec. 2409; R. S. 1879, sec. 682; 1 W. S. 1872, p. 275, sec. 15; G. S. 1865, p. 445, sec. 15; 1 R. S. 1855, p. 360, sec. 22. (4) The Holmes deed was not recorded till April 23, 1894, and was offered in evidence at the September term of court, 1896. Not having been of record ten years before it was offered in evidence, the deed was not prima facie evidence of its execution and genuineness. R. S. 1889, sec. 4869; Hoge v. Hubb, 94 Mo. 489. (5) It was incumbent upon defendants to show, not only the execution of the deed to Holmes, but also its delivery. (6) No pre-

sumption of delivery arises until a deed is acknowledged. Fontaine v. Boatmans Savings Inst., 57 Mo. 552; Scott v. Scott, 95 Mo. 300. (7) Mrs. Galloway, the widow of Thomas Galloway, whose deposition was introduced by plain- tiffs, swears that she never signed any deed to Samuel Holmes, and respondents cite in support of their contention that the deed is not genuine, the following circumstances: (a) The deed antedates the acquiring of title by Galloway. (b) Gal- loway's name is signed to it in full without mark, although he could not write his name. (c) Henry Kennedy, whose name is signed as a witness, was a justice of the peace at the time, and would, in all probability, have attached a certificate of acknowledgment, instead of simply signing as a witness. (d) The deed is neither directly nor indirectly traced to the possession of Holmes. (e) H. H. Bedford, who bought the land, as he claims, at the Holmes partition sale in December, 1874, and sold it to Thomas Davis in 1888, and who is the only witness introduced by defendants to establish the execution of the deed by Galloway, is unable to say definitely where he got the deed. (f) Thomas Davis was not produced as a witness to prove where he got the deed, although he lived at Malden, eighteen miles from the place of trial, and although the deposition of Mrs. Galloway denying the execution of the deed had been on file in the case for over two years. (g) Bedford sold to Thomas J. Davis in 1888, yet the Galloway deed was not placed of record till 1894. (8) The deposition of Mrs. Galloway, who denies that she ever signed a deed to Samuel Holmes is competent. Not having been of record a sufficient length of time, the deed was not prima facie evidence of its execution and genuineness. If it was a forgery, it was not a contract between her and Holmes, and his death could not affect her competency as a witness. The case of Chapman v. Dougherty, 87 Mo. 622, cited by appellants is not in point.

In that case the execution of the deed was admitted, but it was attempted to disprove its delivery by one of the parties after the other had died. (9) The alleged acts of estoppel on the part of Thomas Galloway, even if they were shown by the evidence, which respondents deny, can not avail them in this cause, for the reason that no such acts are pleaded in the answer.

*Mozley & Wammack* for appellants in reply.

This case was tried upon the theory that every fact and circumstance offered in evidence by the appellants tending to establish an estoppel *in pais* against the respondents was well pleaded, and respondents' objection in this court, that they were not thus pleaded, comes too late. Louis v. Morrow, 89 Mo. 126; Turner v. Butler, 126 Mo. 135. If such an objection had been made in the trial court as is made here, appellants could have amended their bill.

VALLIANT, J.—This is a suit in ejectment for eighty acres in Stoddard county. Both parties claimed under Thomas Galloway, who, it is conceded, acquired title by patent from Stoddard county, dated April 21, 1860. Galloway died May 15, 1876. Plaintiff, J. O. Davis, claims in right of his wife, who was one of the children of Galloway, and also by deed from Galloway's widow and his other children, dated July 21, 1894; the other plaintiffs claim under their co-plaintiff Davis by deed to undivided half of the land, dated August 27, 1894.

Defendants claim under a paper purporting to be a deed from Thomas Galloway and wife to Samuel Holmes, dated March 24, 1860, the execution of which is disputed. The other deeds in defendant's chain were: a sheriff's deed in partition conveying the title of the heirs of Samuel Holmes to

Henry H. Bedford, dated December 19, 1874, recorded August 27, 1875; warranty deed from Bedford and wife to Thomas J. Davis, dated December 28, 1888, recorded same day; warranty deed from Thomas J. Davis and wife to Elizabeth Sissler, November 9, 1889, duly recorded; warranty deed from Elizabeth Sissler and husband to John R. Connor, to part of the land, November 14, 1890, recorded same day; and warranty deed from Connor to J. A. Sissler, for same part, February 6, 1892, recorded same day. Defendant Wood is the tenant of the Sisslers, and they were made parties defendants on their own motion. Besides their paper title, the defendants claim title by adverse possession for more than ten years; they also plead certain acts as estoppel, which will be noticed later when we come to discuss them.

The cause was tried by the court, jury waived.

The plaintiffs' evidence consisted of their deeds above mentioned, and evidence as to who were the heirs and widow of Thomas Galloway, and the rental value of the land.

Defendants offered their paper purporting to be a deed as above mentioned from Thomas Galloway to Samuel Holmes. This was in form a warranty deed from Galloway and wife purporting to bear their signatures and seals, and to have been executed in the presence of Henry Kennedy, justice of the peace, but there was no certificate of acknowledgment, and it was not recorded until April 24, 1894. The document, the original of which by agreement of the parties has been filed in this court, has all the appearance of a deed thirty years or more old. When this was offered in evidence the plaintiffs objected, and in support of their objection offered evidence tending to show that it was not what it purported to be.

The evidence consisted of the deposition of Alsyria F. Galloway, widow of Thomas Galloway, and the testimony of two witnesses, John E. Liles and W. S. Phelan.

Davis v. Wood.

When the deposition of Mrs. Galloway was offered, defendants objected on the ground that no notice had been given for taking it, and that the witness was incompetent because she was a party to the deed and the other party was dead.    The court overruled the objection and the defendants excepted. Her deposition on this point was to the effect that she knew Samuel Holmes in his lifetime, that he died during the war in 1863 or 1864, that her husband died in 1876, that her husband was unable to write his name, and usually made his mark to papers that he was to sign.    "Q. I will get you to state if you on or about March 24, 1860, or at any time signed your name to a warranty deed conveying land to Samuel Holmes? A. No, sir; I never signed any deed to Samuel Holmes.    Q. State whether or not you can write your name.    A. Yes, sir, I can write my name.    Q. I will get you to state if you have frequently signed your name to instruments of writing, and if so, did you always write your own name?    A. Yes, sir; I have signed several instruments, and have always wrote my own name."

The testimony of Liles and Phelan was to the effect that they knew Galloway and that he could not write his name, but signed papers by making his mark.    The last witness, who was the clerk of the court, was asked on cross-examination, to compare the signatures to the deposition with that purporting to be the signature of Mrs. Galloway to the deed and say if in his opinion they were the same writing, to which he replied: "The handwriting is similar."

W. H, Miller and Linus Sanford, lawyers, were called by defendant and asked to make the same comparison, and they testified that the handwriting of the two were similar.

The court sustained the plaintiffs' objection, and excluded the deed from evidence, and defendants excepted.

Defendants then proceeded with their evidence, introduc-

ing among other witnesses, Henry H. Bedford, the purchaser at the sheriff's partition sale.

He testified that Galloway was present at that sale and that two other men, whom he named, bid on the property. That after the sale there was some question about the record not showing title in Samuel Holmes, and witness with some other gentlemen went to see Galloway about it, and on that occasion Galloway told them that he and his wife had sold the land to Holmes, and acknowledged a deed before Henry Kennedy, a justice of the peace. That at the time of the sheriff's sale there was a small house on the land and about eight acres were cleared; that witness immediately took possession and through various tenants held possession and paid taxes until he sold to Thomas J. Davis, in 1888. "There never was a time after I purchased this at partition sale that I was not in possession until I sold to Davis." That after his purchase at the sheriff's sale, in 1873 or 1874, he sold to certain parties timber on the land and not knowing the exact location of the lines, asked Thomas Galloway to point them out to him, telling Galloway his purpose; that Galloway went with witness and the timber purchasers, and pointed out the lines. Witness also testified that he knew Henry Kennedy in his lifetime; that he was a justice of the peace in that neighborhood, and died during the war; that witness as a lawyer had practiced his profession before the justice and was acquainted with his signature, and that the signature of that name on the deed in controversy was the genuine signature of Henry Kennedy. Upon cross-examination witness testified that he never had the Galloway-Holmes deed in his possession until a short while before, and his impression was that it was given to him by Thomas J. Davis; did not know who placed it on record; that Davis resides at Malden, and was not present at the trial; that witness had not seen Henry Kennedy's writing since 1860.

Davis v. Wood.

"Q. Will you be certain that this is Henry Kennedy's signature? · A. I am morally certain of that fact; but of course I could not say beyond controversy that it is. I would have no hesitation in saying that it is his signature. I would say that it is, because I have frequently seen him writing when I appeared before him." Cross-examined on the point of his possession, he was able to give the names of some of his tenants, but could not remember them all, nor the course of their succession; admitted that sometimes there was a period of several months between the going of one tenant and the coming of another, and that at one time the house and fence burned down and it was about eighteen months before he rebuilt, but that he did rebuild "either in 1878 or 1879, somewhere along there, or in 1880," and it was occupied from that time on.

R. W. Thompson testified that he was a brother to the administrator of Galloway's estate, and attended to winding it up, that it consisted of personal property only; he never heard of any real estate as belonging to it, and none was inventoried. He knew Mrs. Galloway, the widow, saw her often; she lived in the neighborhood of this land. Witness remembered Henry Kennedy, that he was a justice of the peace, but could not give the date; it was a long time ago; witness was then a boy; knew the land in 1861, could not say who was in possession then, remembered some of the tenants who had lived on the place since 1872, but not all of them, nor the duration nor dates of their occupancy; they claimed to hold under Bedford; in 1872 there were ten or twelve acres cleared. On cross-examination he said that from 1874 to the time Thomas Davis went on the place, he was under the impression the place was lying out. "It was lying out from June 1874 until Davis went there on the place. So far as I remember there was nobody occupying it until Davis went on the place. There may have been others, but I don't remember."

W. C. Brown testified that when Thomas J. Davis moved off, the Sisslers moved in, and by themselves and their tenants have occupied it ever since.

In rebuttal, J. N. Patterson testified that he had known the land since 1880, and that there was no house on it until Thomas J. Davis took possession and built one. In explanation he said that there was a house that was supposed to be on the land, and was used in connection with the clearing, by whom built he did not know, but that when a survey was afterwards made the house was shown to be six or eight feet outside of the line.

Plaintiff J. O. Davis testified that he was thirty-two years old and had known the land since he was a boy, lived within two miles of it, but no one was in possession when he first knew it, nor until T. J. Davis took possession.

The court gave two instructions, or declarations in that nature, at the request of the plaintiff:

"1. The court declares as a matter of law that the evidence is insufficient to establish the execution and delivery of the deed purporting to have been executed by Thomas Galloway to Samuel Holmes and offered in evidence by defendants, and that plaintiffs' objections to its introduction should be sustained and the deed excluded.

"2. The court further declares as a matter of law that since it appears from the evidence that both parties claim under Thomas Galloway, the court, for the purposes of this trial, will consider him to have had title to the premises in controversy; that if the court shall find from the evidence that Thomas Galloway left as his widow, Alsyria Galloway, and his heirs at law, W. T. Galloway, John Galloway, Mary Galloway (intermarried with J. O. Davis), Amanda Galloway (intermarried with W. P. Dowdee), and Nancy A. Galloway (intermarried with John H. Smith); that John Galloway died un-

married and without issue, and that the said Mary Davis, the wife of J. O. Davis, had issue by him born alive and died, then under the evidence, plaintiffs are entitled to recover and the finding should be for them."

To the giving of which instructions defendants excepted at the time.

These instructions sufficiently show the theory upon which the court tried the case without considering the defendants' instructions refused. There was a finding and judgment for plaintiffs from which defendants appeal.

I. Mrs. Galloway was not a competent witness to break down the deed from herself and husband to Holmes. Our statute removing the common-law disability of a witness on account of interest qualifies the enabling act by this proviso: "That in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him." The term "contract or cause of action in issue and on trial," in that connection has been interpreted by this court to include a deed relied upon by one of the parties in an action of ejectment. [Chapman v. Dougherty, 87 Mo. 617; Messimer v. McCray, 113 Mo. 382.] In the deed in dispute Mrs. Galloway was a party and the other party is dead. If that is a valid deed, she thereby sold to Holmes in 1860 the interest that she pretended to sell to the plaintiffs in 1894, and which they are claiming in this suit. She is called as a witness in behalf of her later grantees, who are living, to deny that she conveyed the interest to her former grantee who is dead. If she was herself suing the heirs of Holmes for the land she would clearly not be a competent witness, and by the terms of the statute she is equally incompetent to testify in favor of any party to the action claiming under her.

II.    This is a suit at law and was tried as such. Although a jury was waived, yet the court as the trier of the fact was in that respect in the place of a jury, and as such distinct from its capacity as the court proper. If a jury had been present when the defendants offered their Galloway-Holmes deed, it would have been the duty of the court to have heard in the first instance such evidence as defendants had to show the authenticity of the instrument, and if such evidence made a prima facie case, the paper would then be admitted in evidence and read to the jury. But admitting it in evidence would not be conclusive as to its validity; the due execution of the document was still a question for the jury, and it was for the jury to say upon the whole evidence whether it was what it purported to be, and it was not for the court to say as a matter of law, as it did say in the first instruction, that the evidence was insufficient to prove the deed. [1 Greenleaf Ev., (16 Ed.), sec. 81e; 11 Am. and Eng. Ency. of Law (2 Ed.), 497; Rose v. Gould, 5 Me. 204.] The plaintiffs were therefore premature in their evidence to disprove the deed. It was not necessary for the establishment of this deed at the trial that it should have been proven in the manner prescribed in section 2409, Revised Statutes 1889, to which we are referred. That section relates to the character of proof required to entitle the deed to a certificate that would admit it to record, in the office of recorder of deeds. Neither is this deed to be judged by the provisions of section 4869, Revised Statutes 1889, to which our attention is also called. That section has reference to a deed that has been ten years on record before it is offered in evidence.

The paper in question is what is denominated an ancient deed. Such a deed, because presumably all those who witnessed or participated in its execution are dead, draws the evidence of its authenticity from the conditions and circum-

stances surrounding it. Because in the nature of things it is not susceptible of proof, like a deed of recent date. The law, in its search for truth, examines the proofs of which the case is susceptible, and these must necessarily vary with the peculiarities of each case. Greenleaf says: "An ancient deed, by which is meant one more than thirty years old, having nothing suspicious about it, is presumed to be genuine without express proof, the witnesses being presumed dead; and, if it is found in proper custody, and is corroborated by evidence of ancient or modern corresponding enjoyment, or by other equivalent or explanatory proof, it is to be presumed that the deed constituted part of the actual transfer of the property therein mentioned; because this is the usual and ordinary course of such transactions among men." [1 Greenl. Ev. (16 Ed.), p. 720.] And in a note to that text the editor says: "It has been made a question, whether the document may be read in evidence, before the proof of possession or other equivalent corroborative proof is offered; but it is now stated that the document, if otherwise apparently genuine, may be first read; for the question whether there has been a corresponding possession, can hardly be raised till the court is made acquainted with the tenor of the instrument. Doe v. Passingham, 2 C. & P. 440. A grave question has been whether (in the case of a deed or will of land), the *proof of possession is indispensable;* or whether its absence may be supplied by other satisfactory corroborative evidence." The same eminent law-writer summarizes the requirements of the rule thus: "(a) The document must have been in existence for thirty years or more; (b) it must have been found in proper custody, i. e., in a place consistent with its genuineness; (c) it must not have a suspicious appearance; and (d) there must be, if it purports to convey title to land, some other attendant circumstances corroborating its genuineness, either possession of the land or some other item of corrob-

oration." [Idem, p. 721.]

This document seems to have been covered by all of these requirements. It is dated March 24, 1860, and its appearance does not belie that date; this suit was instituted October 1894, therefore, it was over thirty years old. It was found in the possession of Thomas J. Davis, who had purchased the land from Bedford in 1888, and held possession of it until he sold it to the Sisslers. It is natural that Davis, having bought the land and being in possession of it and finding on the record no deed farther back than the sheriff's deed conveying the title of the Holmes heirs to Bedford, should seek and find, if it was to be found, a deed from Galloway to Holmes and, therefore, the possession of the land by Davis was a fact consistent with its genuineness. The only signature on the document that under the circumstances seemed at all susceptible of proof, that of the subscribing witness Kennedy, was proven with as much certainty as could be expected. It was shown that Galloway could not write his own name, therefore, of course, he would have to have some one else write it for him, and such signature was not susceptible of proof. There was no actual proof that Holmes was ever in possession of the land, but he died in 1863, and the memory of no witness went back that far as to the pos-session. The learned counsel for the plaintiffs, in his brief, very aptly says: "This period of time embraced the war, by which the affairs of Stoddard county were very much disturbed and unsettled. No county in the State suffered more." Galloway was present when the sheriff made public sale of the land for partition between the heirs of Holmes, and when the purchaser afterwards inquired of him about the title he told him that he had sold it to Holmes, and a year afterwards went with the purchaser at that sale and pointed out the lines to him, to enable him to indicate to the timber men where they might cut timber. At that time and until his death, he lived within two

miles of the land.    Three years later Galloway died and his
estate was duly administered, but no land was in the inventory.
His widow and children continued to live in the same neigh-
borhood, but they never informed the administrator that there
was any land belonging to the estate and they never were heard
to assert any claim to it until the deeds preparatory to bringing
this suit were made.    In the meantime, they saw the land occu-
pied, saw a house built on it, destroyed by fire and another one
built.    These acts were committed while the land, if the
Holmes deed was not genuine, belonged to Galloway or his
heirs, and before any claim of third parties intervened.    All
of these acts of Galloway and his heirs, the defendants insist,
estop them and their grantees from now asserting a claim in-
consistent with them.    However that may be, those acts have a,
more direct bearing on the question at issue than by way of
estoppel.    They supply all the requirements of the law in
reference to the authentication of an ancient deed, and they
are intelligible only on the theory that the Holmes deed was
genuine and that Galloway and his heirs knew it.    The plaintiffs
who acquired a half interest of the Galloway heirs just upon
the eve of the institution of this suit, did so in the face of the
adverse possession of the defendants, and with notice of their
claim, and hence there is no innocent purchaser in the case.
[Bartlett v. Glasscock, 4 Mo. 62; Martin v. Jones, 72 Mo.
23; Davis v. Driscoe, 81 Mo. 27; Wiggenhorn v. Daniels, 149
Mo. 160.]

III.    The second instruction given declares as a matter of
law that since both parties claim under Thomas Galloway, if
the court finds that certain parties named are the widow and
children of Thomas Galloway, and that the wife of J. O. Davis
had issue born alive and died, then the plaintiffs were entitled
to recover.    This instruction ignored not only defendants'

Vol 161 mo—3

claim of title under the Holmes deed, but also their title by adverse possession.

Whilst the plaintiffs' evidence on the question of defendants' possession may be said to be sufficient to make a conflict of evidence on that subject, yet the decided preponderance of evidence sustained the defendants' claim to possession under the sheriff's deed from 1872 with the interruption consequent on the change of tenants and the burning of the house and fence above mentioned, down to 1879 or 1880, when the house was rebuilt, and the testimony is almost undisputed that since 1880 the possession has been continuous. The instruction was erroneous.

IV.     There is nothing in the plaintiffs' case that commends it to the favorable consideration of this court; there is no substantial evidence upon which a finding in their favor could be based, and no good purpose can be served by a retrial. Therefore, the judgment of the circuit court is reversed.

All concur; *Marshall, J.,* absent.