W. D. Bidwell et al., Appellants, v. W. E. McCuen et al., Appellees.

EVIDENCE: Ancient Documents—Conditions to Admissibility. Instruments of ancient nature, free from suspicious appearance, found in places consistent with their genuineness, and (if constituting conveyances of land) attended with circumstances corroborative of their genuineness, are admissible, without formal or further evidence of genuineness. So held as to a 60-year-old unacknowledged conveyance of land for a highway.

HIGHWAYS: Failure of Public to Use Full Width—Estoppel. The right of the public to the full width of a duly established high-· way is not lost by abandonment by the fact that, for some 60 years, the public has not used the *entire* width, nor is it lost by estoppel by the fact that, during most of said time, the ad-

joining landowner has been in possession of the unused portion, and has planted trees of small value thereon.

**HIGHWAYS:** Graves within Limits of Highway. Graves, mistakenly placed within the limits of a duly established highway and near the border line thereof, and during a time when the entire width of the highway was not in use, should be appropriately protected after the highway is opened to its entire width.

*Appeal from Jasper District Court.*—K. E. WILLCOCKSON, Judge.

FEBRUARY 15, 1918.

REHEARING DENIED MAY 17, 1918.

SUIT to enjoin the opening of a highway, and for damages to buildings and crops occasioned by the use of explosives in blowing out trees and stumps, in attempting to open said highway in front of plaintiff's premises. Facts are stated in the opinion.—*Affirmed.*

*Ross R. Mowry* and *John McClennan,* for appellants.

*M. R. Hammer, Jr.,* and *E. P. Malmberg,* for appellees.

STEVENS, J.—Plaintiffs are the owners of a tract of land in Jasper County, Iowa, described in their petition as the north fractional half of Section 6–78–21, and the defendants are the members of the board of supervisors of said county. The controversy in this case arises over a strip of land on the north side of said tract, on which, prior to the matters complained of herein, there was a row of willow and cottonwood trees of various sizes, near and parallel with the north line fence, some of which had a diameter of three feet.

Defendants claimed the disputed tract of land as a part of a highway extending east and west in front of said premises, whereas it is the claim of plaintiffs that no highway was ever established in front of said premises, and that they and their grantors have always been in the possession and

had the use of said tract, and are the absolute owners thereof. It is conceded in the evidence that the disputed strip has never been used by the public as a highway, and that plaintiffs and their grantors have, since about the year 1859, been in possession thereof, and have planted cherry and ornamental trees thereon; that said fractional tract has, for a great many years, been enclosed on the north side by a fence erected upon an irregular line.

It is the contention of defendants that a highway 66 feet in width was dedicated in 1868, a portion of the way from the west Jasper County line along the north side of said tract, by Micajah Van Winkle, who owned the land on both sides of the correction line. Assuming this to be true, the west end of said fence stands about 10 feet north of the south line of said highway, from which point it extends in a northeasterly direction to a point somewhat less than one third of the distance across said tract, and then makes a jog, at right angles to the north, a distance of 10 or 12 feet; thence it extends in a slightly southeasterly direction to a point about two thirds of the distance across said tract, from which it continues in a northeasterly direction to the northeast corner of said tract, which is on the center of said alleged highway; so that the width of the disputed strip is approximately from 10 to 33 feet, and extends across the entire north side of said fractional half section.

The north side of said highway is, and has been for many years, fenced on a straight line, which, so far as the record discloses, is conceded by the parties to be properly located. The disputed tract extends west to the line between Jasper and Polk Counties. It is also claimed by defendants that a highway 66 feet in width was legally established by the board of supervisors of Jasper County, from the east end of the disputed tract west to a point where same and a portion dedicated by Micajah Van Winkle meet, a short distance west of plaintiff's residence, and that same

is part of a state highway established by the acts of the third general assembly; and that said strip, 66 feet in width, was, as above stated, dedicated as a highway, all except the strip in controversy having since been continuously used by the public for that purpose.

The evidence shows without conflict that, on or about the 14th day of January, 1868, a petition, signed by numerous property owners in the vicinity thereof, asking the establishment of a highway in Polk County, purporting also to have been signed by Micajah Van Winkle, was filed in the office of the county auditor of Polk County; that notice thereof was given, as required by law, and a highway established, as prayed. Said petition is addressed to the "Honorable Board of Supervisors of Polk County," and asks the appointment of a commission to meet a like commission from Jasper County, to view, lay out, and establish a road 66 feet wide, between Jasper and Polk Counties, running easterly between said counties on the correction line, to begin in Polk County at the southeast corner of Section 6–78–22, and running thence along easterly said correction line 33 feet in width on each side thereof, and between the said counties, until said road shall intersect and coincide with the road passing the house of Micajah Van Winkle, in Jasper County, leading to Prairie City.

In addition to said petition, the defendants introduced in evidence an instrument purporting to be signed by Van Winkle, as follows:

"Know all men by these presents, that I, M. Van Winkle, of Des Moines Township, Jasper County and state of Iowa do hereby grant and convey the right of way for a state road as petitioned for by P. E. Dye and others through my land in all that part of said road that lies wholly in Jasper County, beginning at a point of the 'correction line' at the westerly boundary of Jasper County and running thence easterly along and on both sides of the said 'correc-

tion line' till the said road coincides with the road passing my house. And I hereby covenant that I am lawfully seized of said premises and that I have good authority to grant the right of way through the same for the purpose aforenamed. In witness whereof I have hereunto set my hand and seal this 6th day of September, A. D. 1868."

The above instrument was never filed for record in Jasper County, but was filed in the office of the county auditor of Polk County, and spread upon the records thereof as a part of the proceedings for said highway, and, at the time of the trial of this case, was found among the said highway papers in said office.

On the 19th day of February, 1915, the proper officers caused a notice to be served upon plaintiffs to remove said fence, trees, and shrubs from said highway. The plaintiffs having failed to comply therewith, defendants employed men who entered thereon and cut a large number of trees, and, by the use of dynamite, blew out stumps and trees, scattering the same, as alleged by plaintiffs, over their wheat fields and other premises, and breaking a large number of window lights in their residence, destroying said fence, and otherwise damaging their premises.

This action was brought to restrain defendants from trespassing upon said disputed tract, from destroying the trees and shrubbery growing thereon, and from removing or further injuring said fence and buildings on said premises. A temporary writ was granted by the court, which, upon final hearing, was dissolved. Plaintiffs, in their petition, also prayed and asked judgment for damages on account of the destruction of said trees, and injury to their residence, fence, and crops. The court awarded judgment in their favor for $250 therefor.

I. It is the contention of counsel for appellee herein: (a) That, by act of the third general assembly, commissioners were appointed to locate and establish a state high-

way along the north side of said premises, and that same
was duly located and established; (b) that a change was
made by the board of supervisors of Jasper County in the
state highway, and a 66-foot highway established by it in
1856, from the east line of plaintiffs' premises to a point a
short distance west of the residence now situated thereon;
(c) that, in 1868, Micajah Van Winkle, who owned the land
on both sides of said alleged highway, by an instrument in
writing dedicated a 66-foot highway extending from the
west line of Jasper County east, coinciding with the high-
way above referred to.

All of the above propositions are denied by counsel for
appellant, whose contention is: (1) That no part of said
alleged highway was ever established by dedication, or by
the board of supervisors of Jasper County; (2) that the
highway in controversy is no part of the old state highway;
(3) that, in so far as a highway exists along the north side
of plaintiffs' premises, it was acquired by prescription only,
and the public is confined to the use of the same as it now is;
and (4) that the disputed strip has been in the continuous,
uninterrupted, adverse possession of plaintiffs and their
grantors since long prior to the alleged establishment of
any part of said highway, and that they purchased same
without notice, actual or constructive, of the claim now as-
serted by defendants, and that they have planted fruit and
ornamental trees on said tract, and that the public is es-
topped from claiming same as a part of said highway.

There is considerable conflict in the evidence as to the
exact location of the state highway, but all concede the es-
tablishment thereof. Without quoting therefrom, or re-
viewing the testimony, we reach the conclusion, from a care-
ful reading of the record, that the state highway passed
immediately in front of plaintiffs' premises, for at least a
part of the distance. The field notes and plat of said high-
way were offered in evidence by plaintiffs, but we are un-

able, from the data furnished, to definitely locate the same with reference to the tract in dispute. There is, however, no serious controversy between the parties as to the establishment of a portion of said highway 66 feet in width, from the east line of plaintiffs' premises to a point a short distance west of the residence situated therein. The records of Jasper County, offered in evidence, are quite conclusive upon this point. This highway was located and established on the correction line, without designation of the width thereof, which, however, under the law as it existed at the time, would be 66 feet in width. The only proof offered for the purpose of showing the alleged dedication of said highway from the Jasper County line east to the portion established by the board of supervisors of Jasper County, is the instrument signed by Micajah Van Winkle, copied above. This instrument was not acknowledged nor recorded in Jasper County, but was kept in the auditor's office of Polk County, among the files of the highway petitioned for by Van Winkle et al., and established by the board of supervisors of that county in 1868.

It is contended by counsel for appellant that the signature of Micajah Van Winkle to said instrument was not properly identified, and that same was not admissible in evidence, and did not, by its terms, meet the

1. EVIDENCE: ancient documents: conditions to admissibility.

requirements of a conveyance or instrument of dedication. At the time the petition for a highway was filed in the office of the auditor of Polk County, Van Winkle owned the land on both sides of the correction line. The petition for said highway asked that a commission be appointed by the board of supervisors of Polk County, to meet a like commission from Jasper County, for the purpose of laying out and establishing a road 66 feet in width between Jasper and Polk Counties, extending from the southeast corner of Section 6-78-22, Polk County, east 33 feet on each side of the cor-

rection line, intersecting and coinciding with the highway running past the Van Winkle premises. No witness who knew the signature of Micajah Van Winkle testified to the genuineness of the signature upon the petition or the instrument of dedication. The question here presented is whether said instrument was admissible in evidence, without identification of the signature or other direct proof of its genuineness. The instrument was offered on the theory that it was admissible as an ancient document. The rule governing the admissibility of ancient documents, as stated by Greenleaf, is: (a) That the document must have been in existence for 30 years or more; (b) that it must have been found in proper custody,—that is, in a · place consistent with its genuineness; (c) that it must not have a suspicious appearance; and (d) there must be, if it purports to convey land, some attendant circumstances corroborating its genuineness, either possession of the land or some other item of corroboration. As thus stated, the rule has been quite generally, if not universally, adopted by the courts. *Davis v. Wood,* 161 Mo. 17 (61 S. W. 695) ; *Flores v. Hovel,* (Tex. Civ. App.) 125 S. W. 606; *West v. Houston Oil Co.,* 56 Tex. Civ. App. 341 (120 S. W. 228) ; *Nicholson v. Eureka Lumber Co.,* 156 N. C. 59 (72 S. E. 86) ; *Morgan v. Tutt,* 52 Tex. Civ. App. 301 (113 S. W. 958) ; *Doty v. Lyman,* 166 Mass. 318 (44 N. E. 337) ; *White, McLane & Morris v. Farris,* 124 Ala. 461 (27 So. 259) ; *Anderson v. Cole,* 234 Mo. 1 (136 S. W. 395) ; *McConnell Bros. v. Slappey,* 134 Ga. 95 (67 S. E. 440) ; *Almy v. Church,* 18 R. I. 182 (26 Atl. 58) ; *Reuter v. Stuckart,* 181 Ill. 529 (54 N. E. 1014) ; *Butrick, Petitioner,* 185 Mass. 107 (69 N. E. 1044) ; *Sullivan v. Richardson,* 33 Fla. 1 (14 So. 692) ; *Lunn v. Scarborough,* 6 Tex. Civ. App. 15 (24 S. W. 846).

As before stated, the instrument in question purports to have been executed in 1868, and was spread upon the records of the auditor's office of Polk County as a part of

the proceedings for the highway petitioned for by Van
Winkle *et al.*, and has been kept with the papers relating
thereto in said office. There are no circumstances sur-
rounding its execution, filing, or preservation in the audi-
tor's office during the intervening years tending in any way
to impeach the genuineness thereof or to throw doubt there-
on. It was quite clearly executed, if genuine, in pursuance
of the plan stated in the petition for the establishment of a
highway, part in Polk and part in Jasper County, and
doubtless explains the reason why none was established by
the board of supervisors of Jasper County at this point.
It is not necessary that the custody of the instrument be
in any particular person, but its custody must be consist-
ent with the purpose of its execution. The law in this re-
spect is stated by the Supreme Court of Texas, in *Flores v.
Hovel*, supra, as follows:

"One of the prerequisites to the admission of an an-
cient written instrument in evidence is that it must be
shown to have been in and come from some place where
it would be natural to find a genuine document of such a
tenor as the one in question. The important feature of
this requirement is that no one custody is to be esteemed
the necessary one; all that is required is that it be a nat-
ural one, and the question is one to be left to the determina-
tion of the trial court on the circumstances of the partic-
ular case."

See, also, *White v. Farris*, supra; *Havens v. Seashore
Land Co.*, 47 N. J. Eq. 365 (20 Atl. 497); *Wright v.
Hull*, 83 Ohio St. 385 (94 N. E. 813); *Dickinson v. Smith*,
134 Wis. 6 (114 N. W. 133); *Nicholson v. Eureka Lumber
Co.*, supra; *McArthur v. Morrison*, 107 Ga. 796 (34 S. E.
205); *Doty v. Lyman*, supra; *Brannan v. Henry*, 175 Ala.
454 (57 So. 967).

•   It has also been held that recitals in ancient documents
are evidence of the facts therein stated. *Anderson v. Cole*,

234 Mo. 1 (136 S. W. 395); *Doty v. Lyman,* supra. The possession of said instrument by the county auditor of Polk County was entirely consistent with its genuineness, and it was, indeed, quite natural that same should have been filed in said office, in connection with the petition for the establishment of the highway in Polk County in which it was asked that a commission be appointed to meet a like body from Jasper County to lay out and establish a high-way therein in connection with the Polk County improvement. The failure to acknowledge, and to record the instrument in the office of the county recorder of Jasper County, was probably an omission due to indifference to technicality in the execution of legal papers not uncommon in those days. The recitals contained in said instrument, together with the circumstances surrounding its execution, the petition for the highway filed in the auditor's office of Polk County, the erection by Van Winkle of a fence on the north side of said highway, 33 feet from the correction line, and other facts and circumstances appearing in evidence, satisfactorily show his personal interest in the establishment of a highway at the place in question.

The opening and use by the public, with the consent of Van Winkle, of a portion of the strip, designated in the instrument, together with the other matters referred to, furnish the required corroboration, and establish the admissibility of the instrument. No particular language is necessary to constitute a dedication, and the intention is clear upon the part of Van Winkle to do so. The language of the grant is, "to coincide" with the highway running past his residence. "To coincide" means "to agree with." The fence on the north of the highway was built, and has been since maintained, on a line 33 feet north of the correction line.

II. The next question presented for our consideration is: Has the public lost its right to the disputed strip by

adverse possession of plaintiffs, by abandonment of the
public, or by estoppel? There was, prior
to our decision in *Quinn v. Baage,* 138 Iowa
426, some question as to whether the right
to the use of a highway for the established
width could be lost to the public by abandonment, but the
court in this case said:

2. HIGHWAYS:
failure of
public to use
full width:
estoppel.

"But where the road has been established and con-
tinually used, the mere fact that the fences bordering it are
not on the true line, and the portion beyond has been occu-
pied by the landowner up to the fence, and not made use of
by the public, will not work an estoppel against the public;
but the entire width of the highway may be appropriated
by the public whenever required for the purposes of travel.
The continued use of the highway rebuts any suggestion of
abandonment, and the fact that the entire width has not
been appropriated to such use indicates no more than that,
in the opinion of the then road officers, all is not immedi-
ately necessary to meet the demands of the traveling public.
There had been no abandonment, declared in *Davies v. Hueb-
ner,* 45 Iowa 574, essential to an estoppel in such a case—
merely a delay in occupying until required. *Biglow v. Rit-
ter,* 131 Iowa 213. In this respect, the rule is identical with
that in relation to the acceptance by a city or town of the
portion of a plat set apart for streets and alleys. *Bur-
roughs v. City of Cherokee,* 134 Iowa 429, and decisions
therein cited."

The law as here declared has since been followed, and
is the law of this case. Plaintiffs acquired no rights
to said premises by adverse possession, nor can any right
be predicated thereto on the ground that the public has
abandoned a portion of the highway, as established. There
has been no acquiescence in the line upon the part of the
public, as claimed by counsel for appellant, for the mani-
fest reason that no one representing the public was au-

thorized to enter into an agreement upon, or acquiesce in, any particular location thereof. *Quinn v. Baage,* supra.

Plaintiffs' claim to an estoppel is based upon the fact that they have planted some fruit and ornamental trees on said premises, and that a very small part of their barn extends over the line. The trees consist of two or three cherry trees and a soft maple. No such valuable improvements have been erected upon said disputed tract, or expense incurred in planting and cultivating fruit and ornamental trees, as to justify the court in applying an estoppel thereto. The portion of the barn extending over the line, according to the testimony of the county engineer, does not exceed a few inches, and will in no wise be interfered with by the public; while the fruit and ornamental trees are not of very great value. We therefore conclude that plaintiffs acquired no title to the premises in question by adverse possession, and that defendants were not estopped from causing the obstructions to be removed from said highway.

III. We have not discussed all questions referred to by counsel for appellant, but they have not been overlooked: we do not deem those not discussed of controlling importance.

There are three graves on the east end of the disputed strip, the monuments showing dates 1868, 1869, and 1872, respectively. The bodies there buried are those of M. Van Winkle and two members of his family. 

3. HIGHWAYS: graves within limits of highway.

These graves are located in the portion of the highway established by the board of supervisors of Jasper County in 1856. They are well to the south side of the highway, and we assume that they will be properly protected by the maintenance of a fence or other suitable barrier by the board of supervisors or other officers having charge of said highway. The plaintiffs herein have no other interest in said graves than the public

generally; but they should be properly guarded by the proper highway authorities.

IV. The defendants evidently were very careless in the use of explosives, and in blowing out the trees and stumps along plaintiffs' premises, and showed indifferent consideration for their rights; but the court allowed them damages in the sum of $250, which, we think, will fairly compensate them for the damages actually suffered to the house and other premises of plaintiffs.

We reach the conclusion that the finding and decree of the lower court should be, and it is,—*Affirmed.*

PRESTON, C. J., LADD and GAYNOR, JJ., concur.