ELBRIDGE K. JEWETT *vs.* MAYOR OF MEDFORD & others.

Middlesex.    March 5, 1919. — May 20, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, & PIERCE, JJ.

*Municipal Corporations,* Approval by mayor, Betterment assessments. *Medford.    Tax,* For betterments.

Under St. 1917, c. 344, Part III, § 1, a betterment tax for a benefit received from the laying out of a public street in a city must be assessed within two years after the passage of the order of layout, and in the city of Medford this period of limitation runs from the time when the order of layout was approved by the mayor.

Under St. 1917, c. 344, Part III, § 1, "the board of city . . . officers which is authorized to lay out ways therein" is to determine whether any land receives a special benefit therefrom and the value of such betterment and to "assess upon the same a proportional share of the cost of such laying out." Under the revised

charter of the city of Medford contained in St. 1903, c. 345, as amended by Spec. St. 1915, c. 160, "the board of aldermen, with the approval of the mayor," have authority to order the laying out of streets, ways and highways in the city, "and to assess all damages therefor." The board of 'aldermen of Medford passed an order assessing betterments for the laying out of a street in that city. This order was presented to the mayor for his approval nine days before the expiration of the two years after the passage of the order of layout. The mayor did not approve the order of assessment and did not return it with·his objections thereto within ten days thereafter. If the order was subject to the mayor's veto it would not take effect until ten days after it was presented to the mayor for approval. *Held,* that the order of assessment was subject to the mayor's veto and therefore was invalid because it was not passed within two years after 'the order of layout.

PETITION, filed, as amended, on November 17, 1917, by the owner of certain parcels of land on Second Street in the part of Medford known as Wellington, praying for a writ of certiorari to quash the proceedings attempting to assess a betterment upon the said land of the petitioner for the laying out of Second Street.

The case was heard by *Carroll,* J. The material facts which appeared by the record are stated in the opinion. The single justice ordered that the writ should issue as prayed for, and at the request of the respondents reported the case upon the petition as amended and the answers for determination by the full court.

*A. C. York,* for the respondents.

*F. M. Ives,* for the petitioner.

DE COURCY, J. The petitioner is the owner of certain lots of land on Second Street in Medford. On August 17, 1915, the board of aldermen passed an order laying out Second Street under the betterment act, the order was approved by the mayor on August 19, 1915, and the street was accordingly laid out. On August 7, 1917, an order was passed by the board of aldermen adjudging that the abutting estates had received benefit and advantage from the laying out, and that said estates, among them the petitioner's lots, should be assessed certain amounts for the benefit. This order was presented to the mayor for his approval on August 10, 1917, but he did not approve it, and did not return it with his objections thereto within ten days thereafter.

Under the provisions of St. 1917, c. 344, Part III, § 1, betterments must be assessed within two years after the passage of the order of layout, in order to be valid. *Hitchcock* v. *Aldermen of Springfield,* 121 Mass. 382. In the present case the two-year

limitation began to run August 19, 1915, when the order of layout was approved by the mayor. *Quinn* v. *Cambridge,* 187 Mass. 507. If the order assessing betterments became fully effective on its passage by the board of aldermen (August 7, 1917), it came within the two years. But if the order was subject to the mayor's veto, it did not take effect until ten days after it was presented to him for approval (see *Doty* v. *Lyman,* 166 Mass. 318, 322), or on August 20, 1917, which is one day too late. Accordingly the case turns upon whether the order assessing the betterment was subject to the veto of the mayor. If it was not, the assessment is valid. If it was, the assessment is invalid, and the petitioner is entitled to a writ of certiorari. *Hitchcock* v. *Aldermen of Springfield, supra.*

Under the betterment act the board of city officers which is authorized to lay out ways therein is the body which is to determine whether any land receives a special benefit therefrom and the value of such benefit, and to assess upon the same a proportional share of the cost of the laying out. The charter of the city of Medford vests the government "in a single officer, to be called the mayor, and in a legislative body, to be called the board of aldermen," and in a school committee. St. 1903, c. 345, § 2. Section 21 of that charter, as amended by Spec. St. 1915, c. 160, provides that "The board of aldermen, with the approval of the mayor, shall have authority to order the laying out, altering, relocating, discontinuing and making specific repairs in all streets, ways and highways in the said city, and to assess all damages therefor." The words "with the approval of the mayor," were construed as meaning subject to the veto power of the mayor, when this court was considering a similar provision in the charter of the city of Waltham. *Doty* v. *Lyman,* 166 Mass. 318. It would seem to follow that as the power to lay out ways in Medford is in the board of aldermen subject to the veto power of the mayor, the body charged with the assessment of betterments under the provision of the betterment act above mentioned is likewise the board of aldermen, subject to the mayor's veto.

It is contended by the respondents that the words "with the approval of the mayor" were inserted in said § 21 in order to make the charter conform to R. L. c. 26, § 9, which provides that every order of a city council which involves the expenditure of money, or where concurrence of the board of aldermen and common

council may be necessary, shall be presented to the mayor for approval. But the charter expressly provides for that in § 52: "The general laws relating to the municipal indebtedness of cities, the general laws requiring the approval of the mayor to the doings of a city council or of either branch thereof, and relative to the exercise of the veto power by the mayor of a city . . . shall have full force, application and effect in said city."

This interpretation of the Medford charter, giving to the mayor the right to veto a betterment assessment, is confirmed by the history of the betterment act, and is in harmony with the trend of recent legislation increasing the powers of the mayor. See *Galligan* v. *Leonard*, 204 Mass. 202. Putting one side the statutes specially applicable to the city of Boston, the first betterment act applying to cities which accepted it was St. 1868, c. 75. At that time the power to lay out streets in most cities was in a city council of two branches, the "mayor and aldermen" and the "common council;" and to that city council was given the power to assess betterments. The mayor then was the presiding officer over the board of aldermen, with a casting vote but no veto. See *Day* v. *Aldermen of Springfield*, 102 Mass. 310. When the betterment laws were consolidated in 1871 (St. 1871, c. 382), and the mayor and aldermen were constituted the board to assess betterments, the mayor still had a vote in the board, but no veto power. It was in 1876 that a general law was passed conferring a veto power on the mayor and depriving him of the right to vote with the aldermen. St. 1876, c. 193, now R. L. c. 26, §§ 10, 11. And the anomaly of calling the aldermen "mayor and aldermen," when the mayor's right to vote as an alderman had been taken away from him, was ended by St. 1882, c. 164, providing that in all laws relating to cities the words "mayor and aldermen" should be construed to mean board of aldermen. But there was no indication that the veto power was to be taken from the mayor.

In some of the later charters the extent of the veto is defined and extensive. See charter of Cambridge, St. 1891, c. 364, § 11. In the more recent ones providing for a single board, the "aldermen" are generally given power to lay out streets, assess damages, and, except as otherwise provided, to act in matters relating to such layout subject to the approval of the mayor. This express power of veto seems to cover orders for betterment assessments.

See, for examples, Sts. 1893, c. 361 (Waltham); 1897, c. 172 (Woburn); 1898, c. 302, §§ 15, 17 (Gloucester); 1899, c. 162 (Melrose), c. 240, §§ 16, 17 (Somerville); 1900, c. 323, §§ 15, 17 (Gloucester), c. 427 (Northampton); 1914, c. 609 (Westfield), c. 680 (Attleborough), c. 687 (Revere). And in the general act for the revision of city charters, St. 1915, c. 267, plans A and B, which provide for a city government by a mayor and single legislative body, make every order of the council subject to the veto of the mayor. Part II, § 10; Part III, § 8.

In the light of this history and of the veto power given to him specifically under § 21 of the Medford charter, and generally under R. L. c. 26, § 9, we do not think that the Legislature intended in the betterment act to exclude the mayor's veto.

The result is that the writ of certiorari must issue; and it is

*So ordered.*