JAMES A. SMITH, Plaintiff in Error, *v.* WILLIAM RANKIN, Defendant in Error.

### ERROR TO MARSHALL.

Ancient deeds will not be admitted as evidence, without proof of their execution in some way which shall be satisfactory to the court. The party producing such papers must do everything in his power to raise a presumption in favor of their genuineness.

THIS was an action of ejectment, brought by Rankin, in the Circuit Court of Marshall county, for the recovery of the N. E. quarter of section No. 19, in township 13 N., range No. 9 E. of 4th P. M.

Declaration, notice, bond for costs and affidavit of service, filed December 21, 1854.

At the April term of said court, 1855, defendant was ruled to plead to plaintiff's declaration, and filed plea of not guilty.

The cause was tried by jury, at the April term of said court, 1856, HOLLISTER, Judge, presiding.

The plaintiff first offered in evidence a patent from the United States to Lemuel Tucker for said premises, which was admitted in evidence without objection.

The plaintiff next offered in evidence a deed from Lemuel Tucker to Christopher Vanzant, to wit:

THIS INDENTURE, Made this fifteenth day of January, one thousand eight hundred and nineteen, between Lemuel Tucker, of Davidson county, and State of Tennessee, of the one part, and Christopher Vanzant, of the county of Davidson, and State of Tennessee, of the other part, witnesseth, that the said Lemuel Tucker, for and in consideration of the sum of one hundred and sixty dollars 00 cents, to him in hand paid the said Christopher Vanzant, the receipt whereof is hereby acknowledged, hath given, granted, bargained, sold, aliened, conveyed and confirmed unto the said Christopher Vanzant, his heirs and assigns forever, a certain tract or parcel of land, situated, lying and being in the territory of Illinois, and distinguished in the plan of surveys made to satisfy the bounty land of soldiers in said territory, as the north-east quarter of section nineteen, of township thirteen north,

Smith *v.* Rankin.

in range nine east, supposed to contain one hundred and sixty acres of land, be the same more or less, which land was patented to the said Jeremiah Tucker by the ·President of the United States, the 29th of November, 1817.

To have and to hold the aforesaid land, with all and singular the rights, profits, emoluments, hereditaments and appurtenances of, in and to the same belonging, or in anywise appertaining, to the only proper use and behoof, him, the said Christopher Vanzant, his heirs and assigns forever. And the Lemuel Tucker, for himself, his heirs, executors and administrators, doth covenant and agree with the said Christopher Vanzant, his heirs or assigns, that the before recited land and bargained premises he will warrant and forever defend against the right, title, interest or claim of all and every person whatsoever.

In witness whereof, the said Lemuel Tucker hath hereunto set his hand and affixed his seal the day and year above written.

Signed, sealed and delivered }       LEMUEL TUCKER. [SEAL.]
   in the presence of   }

On the back of said deed appear the following indorsements, to wit:

STATE OF TENNESSEE,
*Davidson County Court,*
*January Session,* 1819.

This indenture of bargain and sale, between Lemuel Tucker, of the one part, and Christopher Vanzant, of the other part, dated the 15th day of January, 1819, for 160 acres of land in the Illinois territory, was acknowledged in open court by the said Lemuel Tucker to be his act and deed, and ordered to be so certified. The probate being of record in this court.

In testimony whereof, I, Nathan Ewing, clerk of said court, have hereunto set my hand and affixed the seal of said court, at office at Nashville, this 20th day [SEAL.] of January, in the year of our Lord 1819, and 43rd year of American Independence.             NATHAN EWING.

Recorder's Office, Edwardsville, Madison co., Illinois. I, Josias Rundle, Recorder for Madison county, do certify the within deed to be duly recorded and examined in Book vol. 4, page 29, this 1 day of Jan., 1820.

JOSIAS RUNDLE.

(*Tit.*)
*No.* 6869.
*Recorded Vol.* 4, *p.* 29.
*Exd. J. Rundle.* 150.
Lemuel Tucker  }
    *To*      } *Deed.* 160 *Acres.*
*Christopher Vansant.* }

To which defendant's counsel objected.

The plaintiff then read in evidence the deposition of Charles A. Rankin, for the purpose of laying a foundation for the introduction of said deed, to which defendant objected.

Deposition of *Charles A. Rankin.* I am 28 years of age; am a tailor by trade; residence, Shelbyville, Ky. I am acquainted with William Rankin, the plaintiff; he is my brother; I am also acquainted with Mr. Smith, the defendant in this suit;

have known him since the 1st of April, 1853. I do not know Henry Clapp. I do not, of my own knowledge, know of Henry Clapp ever calling on William Rankin, sen., in his lifetime. I know nothing of the land Mr. Clapp wished to purchase of my father or any one else.

I took possession of the N. E. ¼ section 19, in township 13 N., of range 9 East of the 4th principal meridian, in the spring of the year 1853. I took possession of the land in behalf of William Rankin, and there was no one in possession of the land when I took possession of it in the year above named.

I had a conversation with Mr. Smith, defendant in this suit, a few days after I took possession of the land. I left the land for a day or two, and went to the town of Henry, and when I returned I found Mr. Smith on the land; he had put up a shanty, and claimed the land. I told him that the land belonged to my father; that I could show him the title deeds. Smith said that he had bought the land of Mr. Lombard; that he (Lombard) stood between him and danger. He also stated that he had been to see Lombard, and Lombard told him that if he was dissatisfied, he would take it back. When I first took possession of the land, I had some lumber hauled to build a house. Mr. Smith took my lumber and threw it in the by-road.

I had a communication with Mr. Lombard some time after I took possession of the land. Mr. Lombard told me that he did not expect to hold the land with his deed, but he thought his tax title would hold it.

Mr. Smith, the defendant, told me that he knew of my father's claim before he bought it. Mr. Smith also told Mr. George Bonham, that he knew Rankin claimed the land before he bought it.

Plaintiff offered to read the aforesaid deed in evidence. Defendant's counsel objected. The court overruled defendant's objection, and allowed the aforesaid deed to be read in evidence.

The plaintiff offered to read in evidence a deed from Christopher Vanzant to William Rankin, to wit:

THIS INDENTURE, Made and entered into this 3rd day of October, 1825, between Christopher Vanzant and Louisa his wife, of Shelbyville, Kentucky, of the one part, and William Rankin, of the same place, of the other part, witnesseth, that the said Vanzant, for and in consideration of the sum of two hundred and ninety dollars, to him in hand paid, the receipt of which he does hereby acknowledge, hath granted, bargained and sold, and by these presents does hereby grant, bargain, sell and convey unto the said William Rankin and his heirs forever, a certain tract and parcel of land, situate, lying and being in the State of Illinois, containing one hundred and sixty acres, being the north-east quarter of section nineteen, in township thirteen north, in range nine east, in the tract appropriated by the acts of Congress for military bounties, in the territory, now State of Illinois, being the

same tract of land granted by the United States of America to Lemuel Tucker, by grant bearing date the 29th day of November, 1817, and by said Lemuel Tucker conveyed to the said Christopher Vanzant. To have and to hold the said tract of land hereinbefore described, to the said William Rankin and his heirs forever, and the said Christopher Vanzant and Louisa his wife will warrant and defend the right and title thereof against the claim of themselves and their heirs, and all and every person or persons whatsoever, claiming or to claim the same.

In testimony whereof, the said Vanzant and wife have hereunto set their hands and affixed their seals the day and year first above written.

CHRISTOPHER VANSANT. [SEAL.]

Witness :          [SEAL.]

STATE OF KENTUCKY, } *Sct.*
  SHELBY COUNTY,          I, Hector Alhinin, clerk of the county court for the county aforesaid, certify that this deed from Christopher Vanzant to William Rankin was produced to my predecessor in office (or his deputy), on the 11th day of October, 1825, and acknowledged by the said Christopher Vanzant to be his act and deed, as appears from an indorsement on said deed in these words and figures, (to wit) : " 1825, 60, Oct. 11th, A. by C. Vanzant."

In testimony whereof, I have hereto subscribed my name and affixed the [SEAL.] seal of said court, at Shelbyville, this 8th day of March, 1853, and in the 61st year of the Commonwealth.

HECTOR ALHININ, *Clerk Shelby County Court.*

STATE OF KENTUCKY, } SCT.
  SHELBY COUNTY,          I, Robert Doak, Presiding judge of the Shelby County Court, certify that Hector A. Chinn, whose Jinueine signature appears to the foregoing certificuit, is now, and was at the time of signing the sam, clerk of the County Court, duly elected, commishion and qualified, and due credit should be given to all of his official acts. Given under my hand this 31st day of March, 1853.          ROBERT DOAK, *P. J. S. C. C.*

On the back of which are the following indorsements :

Christopher Vanzant  
  To          } Deed.  
William Rankin.  
  160 a. Illinois.  
1825, C. O. Oct. 11th.  
  A. by Vanzant.  
Vanzant & Wife  
  To  
Will Rankin.  
  1825, C. O. Oct. 11th.  
A. by Vanzant.

Filed for record March 21st, at 7 o'clock A. M., A. D. 1853, and recorded in book M, page 450.          G. L. FORT,
*Recorder of Marshall Co.*

To which defendant's counsel objected, which objection was overruled by the court, on the ground that said deed was thirty

years old, and, therefore, proved itself. To which ruling defendant then and there excepted. Said deed was read to the jury.

The plaintiff then offered to read in evidence a quit-claim deed for said premises, from William Rankin, Sen., to William Rankin, Jr., to which defendant objected. The objection was overruled, and the deed read in evidence to the jury.

The plaintiff then called *Samuel Flemming*, who testified that the deed of Lemuel Tucker to Christopher Vansant, with the other papers in said suit, were handed to him by plaintiff.

First. Said deed, prior to the date of the deed from William Rankin, Sen., to William Rankin, Jr., to wit, August 15, 1853. Did not know whether he took said deeds from plaintiff since the commencement of suit, but thinks he did. The plaintiff claimed title through said deed. Knows Charles Rankin; first saw him in the summer of 1853. Don't know as any one introduced him; thinks he introduced himself. He was in Lacon. Thinks he remained in Lacon a month or two, during which time he worked for J. D. Coullett, as a journeyman tailor.

The land in question is about eight miles from Lacon. Said Charles Rankin told him he had been out and taken possession of the land, and to look at it, and said he had hauled on a load of lumber, for the purpose of putting up a house. Thinks he went there before he came to see us.

That he did not learn from him that he did more than to haul lumber upon said land to build a house—the quantity not stated; that Rankin did not live on said land, but that it was vacant and unoccupied at the time, and was natural prairie. Does not know what became of said Charles A. Rankin. He said he was agent for Mr. Rankin, the plaintiff in this suit.

Verdict for plaintiff.

Defendant moved the court for a new trial, because improper evidence had been permitted to go to the jury; that the verdict was against the law and evidence; that the instructions given by the court at the request of the plaintiff are not the law, and that the instructions asked by the defendant, and refused by the court, ought to have been given as the law governing the case.

The court overruled the motion for new trial, and rendered judgment in favor of the plaintiff.

HAZARD & PURPLE, for Plaintiff in Error.

W. LANDER, for Defendant in Error.

CATON, C. J. The only questions in this case are as to admissibility of the two deeds, which were admitted as ancient deeds,

without proof of their execution in any way. One of these deeds bears date in 1819, and there is a certificate upon it, purporting to show that it was acknowledged in open court in Tennessee, in the same year of its date ; and from a certificate of the recorder of Madison county, where the lands were situated, it appears that it was recorded in the recorder's office in that county, in the year 1820. There is no pretense that the certificate of acknowledgment was sufficient under our law.

The other deed, which was admitted in evidence without proof of its execution, bears date in 1825 ; has no subscribing witness, has no certificate of acknowledgment, and was never recorded till 1853, and purports to have been executed in Kentucky. To this deed is attached the following certificate :

STATE OF KENTUCKY, ⎫ SCT.
    SHELBY COUNTY.   ⎭          I, Hector Alhinin, clerk of the County Court for the county aforesaid, certify that this deed, from Christopher Vanzant to William Rankin, was produced to my predecessor in office (or his deputy) on the 11th day of October, 1825, and acknowledged by the said Christopher Vanzant to be his act and deed, as appears from an indorsement on said deed, in these words and figures (to wit) : "1825, 60, Oct. 11th, A. by C. Vanzant.

                    In testimony whereof, I have hereto subscribed my name and
    [SEAL.]     affixed the seal of said court at Shelbyville, this 8th day of March,
               1853, and in the 61st year of the Commonwealth.
                    HECTOR ALHININ, *Clk Shelby County Court.*

All we know of the custody of either of these deeds is from the testimony of Flemming, who testifies that they were produced to him in 1853, by the plaintiff, who now claims under them ; and all there is of any proof of possession of the premises under the deeds is, that Charles A. Rankin, claiming to act as the agent of the grantee in the second deed, in 1853, hauled some timber on to the land, which was then vacant prairie, for the purpose of building a house thereon, and that the defendant, a few days thereafter, threw the lumber off the land into a by-way, and took possession of the premises himself, by erecting a house thereon. This presents all there is in this record, as laying the foundation for the introduction of these deeds.

Deeds over thirty years old, are called ancient deeds, and may be read in evidence without proof of the hand-writing of the grantor or subscribing witness, where there is one. But in order to allow this, certain corroborating circumstances must be shown. Formerly, possession under the deed during the thirty years was an indispensable circumstance to raise the presumption of its genuineness, but lately, many courts have either limited the time of possession to a shorter period, or dispensed with it altogether, while others have strictly adhered to the original rule. Indorsements or memoranda, upon the deed or ancient

paper, have been considered as circumstances indicating that they are genuine, where such indorsements or memoranda are of such a character as to show to a cautious and discriminating mind, that they would not be there, had the paper been a forgery. When the present state of the authorities on this subject is considered, it is difficult to lay down a general rule for the admission of ancient deeds, which shall properly protect the rights of those claiming under them, and at the same time guard others against forgeries. To say that the bare production of a deed by the party claiming under it, bearing date more than thirty years ago, is sufficient to raise a presumption of genuineness, and to admit it in evidence, would be opening a door to frauds which would unsettle all land titles at once. It is as easy to date a deed 1815 as 1850, and it is as easy to forge a fraudulent memorandum upon a deed, as it is to forge the deed itself. There was, at least, some degree of safety, in the rule which required a long continued possession under the deed for that could not be got up secretly, and on the spur of the moment, as a forgery may. Great weight, formerly, with much propriety, was attached to the appearance of the document, denoting its real antiquity, but that has ceased to be entitled to any considerable consideration, for it is well known that modern chemistry will, in a single day, produce a paper, having every appearance, both in texture and writing, of the greatest antiquity. When we remember that skill in forgery has kept pace with the rapid advance in the arts and sciences, which is peculiar to our own times, and that the integrity of mankind is not a whit improved with the improvement of the age, we are solemnly admonished, that increased vigilance is necessary to protect the public against the designs of those who are capable of committing crimes. In certain portions of our State the facility now offered by our recording laws, for the perpetration of frauds and forgeries is such, that it has been said that no man feels secure that his estate may not be taken from him at any moment, and it is only necessary that we should open this new door to such practices, to totally destroy all sense of security in land titles. Let this court once proclaim, that a deed of ancient appearance and ancient date, with plausible memoranda upon it, may be read in evidence, without other proof of its genuineness, and there will shortly be such a resurrection of old parchment, as was never before heard of. The facility for proving forged deeds genuine, would be only equalled by the difficulty of proving their falsity. If the party claiming under the ancient deed, produces it, it is said to come from the proper custody, and hence, we shall presume it genuine. And suppose it a forgery, who else should produce it, but the forger who is

to be benefited by it? Indeed, if a forged deed, we should expect to find it nowhere but in the hands of the forger, or else there might be some means of accounting for or detecting it. If the party is bound to show, by legitimate and competent proof, that the paper has been actually in existence the thirty years, there may be some security in the fact, that the paper has not been got up for the immediate occasion, and if the memoranda upon it are required to be proved by legitimate evidence to be genuine, then we shall know that the whole, at least, is not a forgery, and if a long continued possession, under the deed, or at least, consistent with it, is proved, that may afford some evidence at least, that those interested in the subject matter of the conveyance, knew of its existence, and believed it to be genuine. Here there is nothing of the sort. There is nothing shown to the court which might not have been produced the day before it was shown to Mr. Flemming, while the papers themselves show, that if genuine, evidence of a very satisfactory character might have been produced of the genuineness of the indorsements upon them, and of the actual antiquity of the deeds. Let us consider for a moment the indorsements upon the first deed. They are as follows:

STATE OF TENNESSEE,
*Davidson County Court,*

January Session, 1819.

This indenture of bargain and sale, between Lemuel Tucker of the one part and Christopher Vanzant of the other part, dated the 15th day of January, 1819, for 160 acres of land in the Illinois territory, was acknowledged in open court by the said Lemuel Tucker to be his act and deed, and ordered to be so certified. The probate being of record in this court.

In testimony whereof, I, Nathan Ewing, clerk of said court, have hereunto set my hand and affixed the seal of said court at office [SEAL.] at Nashville, this 20th day of January, in the year of our Lord 1819, and 43rd year of American Independence.

NATHAN EWING.

Recorder's office, Edwardsville, Madison Co., Illinois. I, Josias Rundle, Recorder for Madison county, do certify the within deed to be duly recorded and examined in Book vol. 4, page 29, this 1 day of Jan., 1820.

JOSIAS RUNDLE.

*(Tit.)*

*No.* 6869.

*Recorded Vol.* 4, *p.* 29.

*Exd. J. Rundle.* 150.

Lemuel Tucker
   To          }   *Deed.* 160 *Acres.*
Christopher Vansant.

Now this first certificate, if genuine, shows that the probate of the deed is of record in the Davidson County Court, in Ten-

nessee, and if there be any such record there, it was the easiest thing imaginable to show it, and if shown, it would have afforded a strong presumption that the deed produced was the one referred to in the record. But more satisfactory still might have been the records of Madison county. If the certificate of Rundle is genuine, that this same deed was spread upon the records of that county, and although not authorized by law to be recorded, if an exact copy of this deed be actually there found, in a place in the record book corresponding to the date of the certificate, it would show very satisfactorily that there was an original paper in existence at that time, corresponding to the one produced, and which might reasonably be inferred to be the same. It is no answer to say that these things were proved by the certificates themselves, the first of which is attested by the seal of the court. If the certificate of the clerk, attested by the seal of the court, purported to give an examplified copy of a record of that court, there would be force in the suggestion. It purports to give the substance of what took place in the court, and that there is a record in the court, but what that record is, it does not profess to give. That certificate and seal is not in conformity to the law of Congress so as to make it evidence, and if it is not such evidence, it proves nothing. And the same may be said of the certificate of the recorder of Madison. He had no legal authority for recording the document, and hence the record was void. It was not a record, and hence he could by his certificate make no competent evidence in relation to it. He might as well have recorded an ancient ballad and certified that fact, and thereby proved the existence of the old song at that time. It must be remembered that official certificates are only evidence by force of positive law, and that except where they are by law declared to be evidence, they are not proof of what they certify to. Still it was not beyond the reach of the party to prove there are such records, or entries purporting to be such records, in the old record books; and as they would have afforded evidence tending to prove the fact that the deed produced was actually in existence in 1819 and 1820, it was the duty of the party to produce it. Surely, when the party is asking the court to dispense with a general rule of law, and to presume so much in his favor as to admit his deed on trust, or on mere suspicion, he ought to do everything which it is in his power to do, to satisfy the court that the deed is genuine. It may be supposed that this rule, that the party shall produce the best evidence of which the nature of the case is susceptible, is not applicable when ancient deeds are offered, because although it may be shown that the subscribing witness is still living, he need not be produced to prove the deed; but we apprehend that such indulgence

would not be granted, were it shown that the party producing the deed knew the witness was living, and had it in his power to produce him. So absurd a proposition as that, is not and cannot be the law, unless made so by the legislature, and if any courts have ever so held, they have misinterpreted the common law. If there ever was a case where the party should exhaust every effort to satisfy the court that the presumption which he asks the court to draw in his favor, that his deed is genuine, is consistent with the very fact, it is a case of this sort, where at least we can never feel satisfied that we are not lending our aid to fraud and forgery.

The second deed admitted has much less the indicia of genuineness than the first, but we deem it unnecessary to enter into a minute discussion of it. Without saying at this time when we will or will not admit papers as ancient deeds without proof of their execution, it is sufficient to say that we are very clear that these deeds were improperly admitted. We choose to proceed cautiously before attempting to lay down any general rule which shall govern all cases of the sort. Indeed, it may be almost impossible to lay down such a general rule with safety, but we may safely say that in all cases the party shall do everything in his power to raise the presumption of genuineness. To do less than this, it would be better to repudiate the rule altogether; but this we are not at liberty to do, for it certainly is a part of the common law; but we are satisfied that security to property requires that it should not be loosely extended.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*