ADDIE MORGAN ET AL. v. M. J. TUTT ET AL.

Decided November 14, 1908.

**1.—Evidence—Ancient Instrument—Grounds of Suspicion.**

An ancient instrument, to be admissible in evidence without proof of its execution, must be free from just grounds of suspicion, must come from the proper custody, and must have been so acted upon as to afford some corroborative proof of its genuineness. What corroborative evidence will be necessary when there are suspicious circumstances connected with such an instrument, must depend upon the facts of each case.

**2.—Same—Case Stated.**

Endorsed upon a bond for title to land was a transfer in writing, apparently more than thirty years old, by the obligee in the bond to his daughter and her husband; paper similar to that upon which the bond was written was so pasted over said transfer as practically to obliterate the same. Held, such obliteration of the transfer cast such doubt and suspicion upon its genuineness as called for an explanation by the party offering it in evidence, and in the absence of evidence that the transfer in its original form was delivered to the transferees or was ever in their possession, and of any claim to the land by virtue of the transfer during the lifetime of the grantor, the transfer was properly excluded when offered in evidence as an ancient instrument.

**3.—Administration—Inventory—Evidence.**

The issue being whether a certain tract of land was the separate property of a surviving wife or the community property of herself and her deceased husband, the mere fact that the wife as administratrix of her husband's estate included said land in the inventory of said estate, was insufficient to require the conclusion that the land belonged to the community as against other evidence introduced to the contrary.

Appeal from the District Court of Ellis County. Tried below before Hon. F. L. Hawkins.

*T. A. Beatty* and *W. L. Harding,* for appellants.—An ancient document may be admitted in evidence without proof of its execution if it appear to be of the age of at least thirty years, or if it is found in proper custody and either possession under it is shown, or some other corroborative evidence of its authenticity, freeing it from all just grounds of suspicion. Stribling v. Atkinson, 79 Texas, 164, holding pointedly that interlineations and erasures in an ancient deed are no reasons for excluding it when its genuineness is not put in issue; Woodward v. Keck, 97 S. W., 854; Ammons v. Dwyer, 78 Texas, 650; McCelvey v. Cryer, 8 Texas Civ. App., 440, holding where ancient deed showed one name had been erased and another substituted, there was no ground for excluding it from evidence.

Where the evidence shows, as it does in this case, that the husband had built and established his home upon a tract of land, and died leaving his wife and infant children in possession of the same, the children and their mother were tenants in common, and the possession of the

mother, after the children married and left the old home, was not adverse to the children. Phillipson v. Flynn, 83 Texas, 583; Rowland v. Murphy, 66 Texas, 535; Moody v. Butler, 63 Texas, 210; Hudgins v. Sansom, 72 Texas, 231.

Taking and recording a deed to the 129 acres in controversy by Mrs. Mary R. Mayfield in 1878 to perfect the title to the land inured to the benefit of her cotenants, and was not an ouster nor notice to them of adverse possession by their mother. Lowery v. Henderson, 60 Texas, 297; Foster v. Johnson, 89 Texas, 647; Phillipson v. Flynn, 83 Texas, 583.

*Groce & Eskridge,* for appellees.—In order for an ancient document to be admissible in evidence without proof of execution, it is not sufficient that it appear to be at least thirty years of age or that it comes from a proper custody, etc., as asserted by the proposition of appellants' counsel, but it is of first importance to the admissibility of such an instrument without proof of execution that it be free from suspicion and come from proper custody; and if there be circumstances of suspicion connected with the instrument, then there must be corroborative proof of genuineness, the nature of which will depend upon the facts of each case. Stroud v. Springfield, 28 Texas, 649-63; Ammons v. Dwyer, 78 Texas, 649-51.

If J. O. Hicks ever had any estate, community or otherwise, in the property in question, it was, at most, only an equity, and was repudiated by Mary A. Hicks when she took the title to the property in her own name in November, '78, which repudiation was followed by continued claim on her part of individual ownership for the remainder of her life. De Cordova v. Smith, 9 Texas, 149-50; Winburn v. Cochran, 9 Texas, 123-26; Wingate v. Wingate, 11 Texas, 429-30; Robertson v. Wood, 15 Texas, 1.

The rule generally broadly stated that one cotenant can not by purchase acquire and assert against his cotenants an adverse title, means no more than that the other tenants may by reasonable action have the benefit of the title so purchased, and does not mean that such a purchase ipso facto vests the purchased estate in all the joint tenants. That one cotenant may acquire the title to the entire estate by limitations is well settled. Freeman on Cotenancy, 1st ed., pars. 153-56; Roberts v. Thorn, 25 Texas, 728; Rippetoe v. Dwyer, 49 Texas, 505; McFarlin v. Leaman, 29 S. W., 44.

The assertions of adverse and individual interest by Mary A. Mayfield in and to this land were of a nature that appellants could not have remained in ignorance of them without culpable laches and negligence on their part continued for much more than the periods of four and ten years limitation pleaded by plaintiffs. The means of information were at hand, and appellants can not escape the pleas of limitations by asserting ignorance of facts which in the exercise of ordinary diligence they should have known. Boren v. Boren, 85 S. W., 48; Callan v. Callan, 74 S. W., 965; Gerfers v. Mecke, 67 S. W., 144.

If the property was ever community property of J. O. and Mary A. Hicks, then the homestead right of Mary A. Hicks was no obstacle to an action by defendants to assert their title through J. O. Hicks as against the claim of Mary A. Hicks, afterwards Mayfield, that the land was her

separate property. A remainderman may sue when a life tenant claims the fee. Clark v. Cattron, 56 S. W., 99.

TALBOT, ASSOCIATE JUSTICE.—This is a partition suit, instituted in the District Court of Ellis County between the heirs of Mary A. Mayfield, deceased, in which the principal controversy was and is whether a certain tract of land of 129 acres was the separate property of the said Mary A. Mayfield, or the community property of herself and her second husband, J. O. Hicks. The case was tried by the court without a jury, and, judgment having been rendered in favor of the plaintiffs, the defendants appealed. The following facts appear:

Mary A. Mayfield was the daughter of one R. B. Tutt, of Rusk County, Texas, and was married three times. Plaintiff, M. J. Tutt, was the sole issue of the first marriage. The second marriage was with one J. O. Hicks, of which there was issue three daughters, appellant, Addie Morgan, Emma, who married R. W. Stevenson and died before her mother, leaving defendants below, Frankie Witherspoon and Edna Workman, her only children, and her husband surviving her, and Jimmie, who died unmarried, childless and intestate, before her mother. There was no issue of the third marriage. In the spring of 1858 J. O. Hicks and wife, Mary A., were living in Henderson, Rusk County, and in April of that year Hicks sold property in Henderson to the value of $1,700, and moved with his family to Ellis County. He first came to Waxahachie, then went up near Midlothian, and in the fall of 1858 moved on to the 129-acre tract of land in controversy, built a house upon it, and lived there with his family until he went to the Civil War in 1862, and died in the army in the fall of that year, his wife and children continuing to live on the land. The widow married Robert F. Mayfield November 7, 1878, and they continued to reside on the land in question until said Mary A. died, intestate, March 10, 1904.

On September 9, 1858, one William C. Sweat, as attorney in fact for James L. Thornberry, made to the said R. B. Tutt a bond for title to the 129-acre tract of land in controversy, by which, in consideration of $100 cash, and the obligation of said Tutt to pay $550 one day after date, and $650 twelve months after date, he bound himself to make, or cause to be made, to said Tutt, title to said land upon payment of said credit sums. This bond, by order of the trial court, has been sent to this court for inspection, and it appears to have been written on old-fashioned foolscap paper, and upon its back there was at some time written the following: "I transfer the within bond to James O. Hicks and Mary Ann Hicks, his wife, and they are authorized to take the deed in their names. Given under my hand and seal this 18th day of October, 1860. (Signed) R. B. Tutt. Test: T. B. Hicks, E. J. Batchler, or Barksdale."

Over this writing has been pasted paper like that upon which the bond was written in such manner as to completely cover the transfer, so that it is not apparent to ordinary observation, but by holding the paper between one and the light the transfer can be read. The earliest possession of this instrument by anyone through whom any party to this suit claims, shown by the record, is the testimony of appellant T. A. Morgan that, in 1873, this bond was in the possession of Mrs. Hicks (afterward Mayfield), in the same condition in which it now is, with the paper

pasted over the transfer, and it seems since that time to have been mostly in the possession of Morgan or his wife, or at least for about twenty-eight years.

There is evidence to the effect that the land in question had been paid for before the Civil War (by whom is not clear), except $70, and that Thornberry disappeared about the time the war began and did not return until about 1878, when the balance due was paid him, and on November 6, 1878, he executed and delivered to Mary A. Hicks a deed conveying to her the tract of land in question, which was filed for record February 14, 1879, and was duly recorded in the Ellis County records. It was controverted whether the $70 was paid from proceeds of stock sold for Mrs. Hicks about the time of such payment, or with money advanced by appellant Morgan, the evidence being conflicting. The testimony of R. F. Mayfield and of Mrs. Middleton tends to the former conclusion, while Morgan testified that he advanced Mrs. Hicks the money to finish paying for the land $70, for which she sold him about two acres of the land in question—timber land. This was in 1878. In 1886 R. F. Mayfield and wife sold four acres, more or less, of the land in question to the Ft. Worth & New Orleans Railway Company, the deed being put upon record the same year, and in February, 1898, they sold another portion of the tract to certain trustees of a burying ground, this deed being filed for record on the day of its execution.

R. F. Mayfield, who knew Hicks and wife from the time they came to Ellis County until their respective deaths, testified that it was understood in the country that Mr. Tutt bought this land, and that Mrs. Mayfield had from the time of her marriage to him continuously claimed this land as a gift from her father, and that there was no other claim made from that time by anybody that he ever heard of. Mrs. Middleton, a near neighbor of Mrs. Mayfield, testified that Mrs. Mayfield frequently talked with her about the matter, and always claimed the property in question as coming to her from her father, who paid for it, except the last payment, and that during Mrs. Mayfield's life she never heard of any claim by anyone to the contrary, while the defendant, Frankie Witherspoon, who was twenty-five years of age when testifying, and has been a member of her grandmother, Mrs. Mayfield's, family since she was four years old, testified that Mrs. Mayfield told her a good many times that her father had given her the place in controversy.

Mrs. Hicks took out letters of administration upon the estate of her deceased husband, J. O. Hicks, in 1863, and inventoried as part of the estate of J. O. Hicks 129 acres of land, but the administration proceedings were dismissed in 1872. R. B. Tutt was considered wealthy, and J. O. Hicks and wife were people of moderate means. It was admitted that appellant, Mrs. Workman, would testify that she never had any notice that Mary A. Mayfield was claiming the property adversely to her, or as the separate property of Mary A. Mayfield; and Mrs. Addie Morgan testified: "I never heard until after my mother's death that it was claimed by her or anyone else that the land in controversy was claimed to be her separate property." Robert F. Mayfield in person waived all the interest he had in the property, life or otherwise, including homestead right.

Plaintiffs below alleged the property in controversy to have been sepa-

rate property of Mary A. Mayfield by deed, and also by limitations of three, four, five and ten years, and the operation of the doctrine of stale demand. No plea of disability of any kind was interposed by any of the defendants to plaintiffs' claim of title in Mrs. Mayfield by limitations, but the Morgans and Workmans claimed the property in controversy to have been community property of J. O. Hicks and wife. The court trying the case found the property in controversy to have been separate property of Mary A. Mayfield, and that the parties were joint owners as her heirs, and not otherwise, and that any rights of defendants in the land through J. O. Hicks, if he ever had any interest in such land, were barred by the statutes of limitations and stale demand, as pleaded by the plaintiffs.

In the trial the defendants, appellants in this court, offered in evidence the transfer endorsed on the bond for title, and which was obscured by the paper pasted over it, as above stated, without proof of its execution. To the introduction of this transfer plaintiffs objected on the grounds "that there was no proof of its execution and delivery in its original or present condition; that it appeared suspicious on its face, and such suspicions were not explained." The trial court sustained the objections, excluded the transfer, and this is made the basis of appellants' first assignment of error. It is contended that as the transfer was over thirty years of age it proved itself, and needed no explanation because of the paper pasted over it. We are of the opinion there was no error in the exclusion of this evidence. The rule laid down by Mr. Greenleaf in regard to the admissibility of an ancient instrument, without proof of execution, and which has been approved and followed by the courts of this State, is that such instrument must be free from just grounds of suspicion, must come from the proper custody, and have been acted upon so as to afford some corroborative proof of its genuineness. (1 Green. on Ev., sec. 510; Stroud v. Springfield, 28 Texas, 649.) Just what corroborative evidence will be necessary to authenticate the instrument, if there are circumstances of suspicion connected with it, will depend upon the particular facts in each case. The circumstances of corroboration, however, in such case must be, at least, sufficient to raise a reasonable presumption of genuineness. (Stroud v. Springfield, *supra.*)

The practical obliteration of the transfer offered in evidence by the paper which had been placed over it cast such doubt and suspicion upon its genuineness as called for a satisfactory explanation of it by appellants. The rule of evidence announced has not been complied with in this case. There is no evidence that the bond for title with the transfer in its original form was delivered to J. O. Hicks and Mary A. Hicks, or to one of them, or was ever in their possession or in the possession of either of them in the lifetime of the said J. O. Hicks, as an instrument of conveyance. Nor is there any evidence that J. O. Hicks ever claimed the land in controversy under the said transfer, and it is apparent, we think, that his wife, Mrs. Hicks, was not claiming under it.

In Holmes v. Coryell, 58 Texas, 680, after laying down the rule with reference to the admissibility of a deed thirty years old substantially as we have stated it above, it is said that such deed "must come from the proper custody, among other reasons, mainly that its delivery may be

evidenced by the possession of the person claiming under it." The possession of the land by Hicks and wife antedates the transfer in question about two years, and the evidence tends to show that it began in subordination to the rights of R. B. Tutt, and, aside from said transfer, which can not be considered, we see nothing in the record that would justify the conclusion that the holding of the land by J. O. Hicks and Mrs. Hicks, after his death, was not consistent with the claim of Mrs. Hicks that her father, R. B. Tutt, gave her said land. The mere fact that the land was inventoried as a part of the estate of J. O. Hicks, in view of the other facts, was insufficient to authorize such conclusion. The burden of explaining the suspicious change made by covering up the transfer was upon appellants, who offered said transfer in evidence, and not upon appellees, as contended by counsel for appellants.

The second and third assignments are to the effect that the trial court erred in finding the property in controversy to have been the separate property of Mary A. Mayfield. We think the evidence is sufficient to support the court's finding. It appears that the legal title to the property in controversy was in the said Mrs. Mayfield, and had been for twenty-five years or more before her death, during all of which time she claimed it as her own. It was also shown, without objection, that Mrs. Mayfield stated repeatedly to different persons who testified at the trial that her father gave her the land, and that during her occupancy valuable improvements were made upon it; and, consistent with her declarations that she had received the land as a gift and her asserted separate right thereto, and inconsistent with any recognition on her part or claim of the appellants that said land was the community property of herself and her second husband, J. O. Hicks, she on different occasions and to different persons, after the death of the said Hicks, sold parcels of said land, apparently dealing with it as her separate property, the deeds to which were placed upon record and possession taken. There is also evidence to the effect that up to the time of Mrs. Mayfield's death appellants never claimed to appellee or to Robert Mayfield that the land in controversy was other than the separate property of Mrs. Mayfield, and seemingly recognized it as such, for that the evidence shows that Robert Mayfield continued to reside on the land after the death of Mrs. Mayfield, and divided the rents arising from the land between the appellants and appellee, upon the basis of ownership, as alleged by appellees, which was accepted by them without protest or claim by either that she owned a greater interest; that is, Robert Mayfield paid to appellee one-third of said rents, to Mrs. Morgan one-third and to Mrs. Witherspoon and Mrs. Workman one-third.

It is also assigned "that the court erred in his fifth conclusion that the defendants were barred by limitation as against any interest they might have inherited from J. O. Hicks." Having held that the evidence supports the court's finding, that the land was the separate property of Mrs. Mayfield, the appeal is effectually disposed of thereby, requiring an affirmance of the judgment below, and it becomes unnecessary to decide this question.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.