## CENTRAL INDIANA RAILROAD COMPANY v. McMAINS.

[No. 8,367. Filed December 18, 1914. Rehearing denied March 2, 1915.]

1. EVIDENCE. — *Documentary Evidence.* — *Ancient Documents.* — It is the general rule that when a document appears to be at least thirty years old, is found in proper custody, is unblemished by alterations and otherwise free from suspicion, it is admissible in evidence without proof of its execution, but the rule is modified somewhat by circumstances rendering the authenticity of the document doubtful; hence there was no error in refusing to admit in evidence a deed for a right of way, though appearing to be more than thirty years old, which had never been acknowledged or recorded, where its execution had been denied by a

*non est factum,* and possession of the land had never been taken to the extent of the description contained therein, and one of the grantors who was present and testified at the trial was not asked concerning it. p. 137.

2. ADVERSE POSSESSION.—*Right of Way.*—*Possession under Color of Title.*—Where the owner of land orally agreed to a railroad right of way of a certain width across his land and possession consistent therewith was shown, but not in accordance with a purported deed for the same right .of way described as of a greater width, the possession shown did not amount to a constructive possession of that portion of the land in dispute, and not embraced in the oral agreement, so as to establish title thereto by adverse possession. p. 140.

3. RAILROADS.—*Right of Way.*—*Conditional Grant.*—Title to land for a right of way did not pass to a railroad company under a deed specifically stating that the grant was made on condition that the railroad company fence the right of way as soon as the railroad was completed, where it was shown by undisputed evidence that the condition had never been complied with, and there was nothing to show that it had been waived. p. 141.

4. VENDOR AND PURCHASER.—*Constructive Notice.*—*Tax Records.*— A purchaser of land is not held to constructive notice of the contents of the tax return records. p. 142.

From Clinton Circuit Court; *Joseph Combs,* Judge.

Action by the Central Indiana Railway Company against Harry McMains. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*U. C. Stover* and *Guenther & Clark,* for appellant.

*R. H. Williams, C. F. Merrill* and *Sheridan & Gruber,* for appellee.

IBACH, J.—Appellant brought this suit to enjoin appellee from destroying or interfering with its railway fences and roadbed, and to quiet title to a right of way sixty feet wide through appellee's farm. The suit was the result of a dispute between appellant and appellee as to the width of the right of way of appellant. Trial was by the court, which found the facts substantially as follows, and stated conclusions of law for the defendant, upon which judgment was rendered.

Since 1903 appellant has owned and operated a line of

railway which passes over appellee's real estate. This line of railway has been in operation as a common carrier of passengers and freight since 1887 or 1888. On July 3, 1871, the Anderson, Lebanon and St. Louis Railway Company was incorporated in this State, and in 1872 or 1873 entered upon and took possession of a strip of real estate forty feet wide .across the land now owned by appellee. This land was level and covered with timber, and said railway company cut all of the timber off said railway strip, built a grade in the center of the strip, and excavated on each side of the grade, all of which excavations are within the limits of the 40-foot strip. At the time the railway company entered upon and took possession of said strip, William Kuser, George A. Myers and John H. Parish were the owners of respective portions of the lands now owned by appellee. It was agreed between the railroad company and Kuser that the company should take a 40-foot strip for a railroad right of way, but there was no agreement between the company and Myers and Parish as to the right of way over the portions of the land which they owned. After the grade was completed, no rails were then laid, and nothing more was done toward the completion of the railroad until 1887 or 1888, when said road was completed. Shortly after the railroad grade was built, Kuser, Myers and Parish built fences parallel with and along said grade. The fences were built on Kuser's land at a distance of 23 feet, 6 inches from the center line of the grade on the north side, and 20 feet, 4 inches from the center line on the south side, and on Myers' land on the south side at the west line at a distance of 20 feet, 4 inches from the center, running to a point 18 feet, 11 inches south of said center at the east line, and on Parish's land 18 feet, 11 inches from the said center line of said grade. Said fences as built by Kuser remained in said location continuously until 1905 or 1906, and as so built by Myers and Parish until 1909, and during said periods each of said persons or his grantee was cultivating, and was in the open, notorious, adverse, continuous

possession under claim of right of the lands up to said fences.

In July, 1885, the Midland Railway Company upon the foreclosure of a mortgage against the Anderson, Lebanon and St. Louis Railway Company, bought its right and railway property, including the right of way above described, and in 1887 or 1888 laid ties and rails on the grade built by its predecessor in 1873, and began to operate the road. In 1891 the Chicago and Southwestern Railroad Company purchased said line of railway, and in April, 1903, the appellant purchased said line of railway at receiver's sale.

In 1906, appellant without right built a fence out from the north line of its right of way on Kuser's land 29 feet, 6 inches from the center of the grade, 6 feet further out from the center than the old fence, and on the south side of part of said lands also built a fence 29 feet, 6 inches from the center of the grade, this being done when William Kuser owned said land. While appellant was building the fence Kuser was away from home, and did not return until it was almost completed, and the fence was built without his consent and over his protest. Thereafter the old post holes and ends of posts indicated where the old line of fence had been and were easily open to observation and appellee observed them when he bought said lands. In 1907, Kuser by warranty deed conveyed said lands to Lewis Bennington, who conveyed the same to appellee in 1908, together with portions of lands formerly owned by Myers and Parish, on the latter portions of which the fence built in 1874 still stood. While appellee was away from home, appellant tore down said old line of fence, and undertook to erect a new line of fence 29 feet, 6 inches from the center line of the grade, without appellee's consent, and without any right. As soon as appellee learned of said construction, he notified appellant to cease building the new fence and to put said fence on the line of the old fence, which appellant refused to do, whereupon appellee removed from his land the new fence.

Appellant has a right of way through appellee's lands

which extends from 20 feet, 4 inches to 18 feet, 11 inches from the center of the grade on the south side of the grade, and which extends 23 feet, 6 inches from the center of the grade on the north side thereof. On October 12, 1910, appellant did not have any fence along the line of its right of way through appellee's lands, on which day appellee gave appellant notice to construct a fence along said right of way, pursuant to the laws of Indiana. When, after thirty days, appellant refused to build the fence, appellee entered upon the right of way and was proceeding to build a fence pursuant to law, and was so engaged when appellant brought this suit. At the time the suit was brought appellee was claiming no interest in appellant's right of way, and was in no way unlawfully interfering with or trespassing upon appellant's right of way. Neither appellee, nor any of his grantors, either immediate or remote, ever received any compensation whatever for the right of way of appellant's railway through his lands, from appellant or any of its predecessors.

The additional strip of land attempted to be taken by the plaintiff outside of its said right of way was not and is not now necessary for the operation of appellant's railroad, and was not and is not now in any way coupled with the public interest. Appellant has made no change in its roadbed and has made no more excavations and has laid no additional switches or side tracks and made no additional buildings of any kind or description along its right of way since the construction of said track in 1887 or 1888. Appellant has obtained no interest and has no interest in any part of appellee's real estate except the right of way herein described.

The ground of error most strongly urged is the court's refusal to admit in evidence a paper which purported to be a quitclaim deed from Wm. A. Kuser and George A. Myers to the Anderson, Lebanon and St. Louis Railroad Company of a right of way thirty feet wide on each side of the center line on condition that the railroad company build a good

fence on each side of said railroad through said land within three months after the completion of said railroad, and make one crossing on said land.   This paper was dated September 4, 1873, and bore signatures which purported to be those of Kuser and Myers.   The name of F. M. Kersey, who was a promoter of the Anderson, Lebanon and St. Louis Railway Company was signed as a witness.   The deed was not acknowledged.   Its execution had been denied by the filing of a verified answer of *non est factum*.   The signature of F. M. Kersey was identified by his son, who was familiar with his handwriting.   An attempt was made to have a witness identify the signature of Mr. Kuser, but on cross-examination it was clearly shown that this witness was not qualified to testify as to the signature.   Appellant then offered the deed in evidence, over appellee's objection, which was in substance, that a plea of *non est factum* had been filed, and the evidence was not sufficient to prove its genuineness; and there was no evidence as to the signature of Myers; that William A. Kuser, was then present in court; that no reason was shown why Myers could not be produced, or why the signatures could not be proved by persons who had seen Myers and Kuser write; that the conditions of the deed were shown by the evidence not to have been complied with; that the deed had never been acknowledged or recorded; that the evidence does not show that appellant ever went into possession of the land described in the deed; and that appellee was an innocent purchaser, who had no notice of the deed.

Appellant now urges that the deed should have been admitted as an ancient document, being more than thirty years old.   It is the general rule that when a document appears to be at least thirty years old, is found in proper custody, is unblemished by alterations and otherwise free from suspicion, it is admissible in evidence without proof of its execution.   17 Cyc. 443.   This rule is modified somewhat by circumstances.   In *Smith* v. *Rankin*

(1858), 20 Ill. 14, 23, the court said that the party offering a paper as an ancient document shall in all cases do everything in his power to raise the presumption of genuineness; that "it may be supposed that this rule, that the party shall produce the best evidence of which the nature of the case is susceptible, is not applicable when ancient deeds are offered, because although it may be shown that the subscribing witness is still living, he need not be produced to prove the deed; but we apprehend that such indulgence would not be granted were it shown that the party producing the deed knew the witness was living, and had it in his own power to produce him." In *Wilson* v. *Betts* (1847), 4 Denio (N. Y.) 201, 215, the court said, "The plaintiff has then two facts, and only two on which she can rely for the confirmation of this deed; it comes from the proper custody, and is more than thirty years old. Those facts, whether considered separately or conjointly, are just as consistent with the supposition that the deed is a forgery, as they are with the supposition that it is genuine; and consequently they cannot lay a sufficient foundation for presuming in favor of the due execution of the instrument. There is, I think no well considered case in this country which affirms the contrary doctrine. In the absence of all the usual proof of execution, nothing can tend to corroborate the deed but acts done under it, or the recognition of its validity by those who have an interest in the other direction. When possession has accompanied the deed, or other unequivocal acts have been done under it, then the longer it has existed, the stronger is the presumption that it is genuine. But if the deed has never been put in use, and especially if the right which it professes to give has been denied by an adverse possession, then the longer the deed has existed the stronger is the presumption that it is not a genuine instrument." In *O'Neal* v. *Tennessee Coal, etc., R. Co.* (1903), 140 Ala. 378, 386, 37 South. 275, 1 Ann. Cas. 319, the court said, "In all of the cases to which our attention has been called, it appears that the

instrument offered and admitted in evidence as an ancient document, * * * showed upon its face to be sufficiently executed to operate as a conveyance of the title, and proof of execution was all that was necessary to render it competent in evidence even as a recent document, and being ancient, the rule under consideration dispensed with the necessity of proving its execution." In the case of *Morgan* v. *Tutt* (1908), 52 Tex. Civ. App. 301, 305, 113 S. W. 958, it was said, "The rule laid down by Mr. Greenleaf in regard to the admissibility of an ancient instrument, without proof of execution, and which has been approved and followed by the courts of this State, is that such instrument must be free from just grounds of suspicion, must come from the proper custody, and have been acted upon so as to afford some corroborative proof of its genuineness (1 Green. on Ev. §510) * * * . Just what corroborative evidence will be necessary to authenticate the instrument, if there are circumstances of suspicion connected with it, will depend upon the particular facts in each case. The circumstances of corroboration, however, in such case must be, at least, sufficient to raise a reasonable presumption of genuineness." In the case of *West* v. *Houston Oil Co.* (1909), 56 Tex. Civ. App. 341, 344, 120 S. W. 228, the court said, "The conditions to which such a document is subject in order to authorize its introduction are: (1) it must have been in existence for the period of 30 years; (2) it must have come from the proper custody—*i. e.,* from some place where it would be natural to find a genuine document such as the one in question; (3) the document must in appearance be free from suspicion * * * ; and (4) in some jurisdictions, possession under the document is regarded as a requirement, but such condition does not obtain in this state, though it may be considered by the jury as a circumstance in corroboration of the genuineness of the document. * * * When these requirements have, in the opinion of the trial judge, been sufficiently met, the rule does not require the

calling of the attesting witnesses nor the offering of other usual evidence, in order for the document to go to the jury. When such other evidence is accessible, the failure to produce it may be a subject of comment, but it does not affect the question of the admissibility of an ancient document as evidence. But, though the judge has deemed the evidence sufficient to allow the document to go before the jury, it is not to be inferred from such action on his part that the document is genuine.''

The above extracts from the opinions of various courts show the attitude which has been generally taken when there is anything to throw doubt on the authenticity of a document offered as an ancient document. Let us see what in this case were the circumstances corroborating the deed, and whether there were grounds of suspicion. Appellant produced the deed from its archives, and so far as the record shows, it was apparently as old as the date it bore. The signature of the promoter of the grantee company who signed as witness, and who was deceased at the time of the trial, was proved. It may be that were there nothing to cast suspicion on the instrument enough was shown to justify its admission. But what were the circumstances against its admission? Its execution was denied by a *non est factum*. It was not acknowledged. These circumstances would prevent its admission without proof of execution, if of a modern date. The deed had never been recorded. The only witness produced to authenticate the signature of Kuser was shown not to have a sufficient knowledge of Kuser's handwriting and not to be a handwriting expert, and no attempt was made to prove the signatures by other witnesses. Possession under the deed corresponding to its terms was not shown. It appeared that appellant and its predecessors had been 2. since about 1872 in possession of a fenced right of way about forty feet wide. It was shown in evidence that Kuser and the agent of appellant's predecessor had agreed orally to such a right of way. Thus the only posses-

sion shown was consistent with such agreement, but not with the deed. Though the land actually occupied as a right of way was a part of that included in the deed, yet we can not say that possession of a fenced right of way narrower than that named in the deed is possession of a part of a fenced and cultivated field under adverse possession on either side of the right of way, and we do not believe that the rule that possession of a part of a tract of land may be constructive possession of the whole, applies under circumstances such as these. It is also apparent that appellant did not do everything in its power to produce evidence to substantiate its deed, for the alleged grantor was in court and testified, but was not called upon to testify as to the deed. It does not seem that appellant has cause to complain of the failure to admit the deed in evidence as an ancient document, when it was in its power at the trial to have questioned the alleged grantor as to the deed's authenticity. Further, in

3. view of the evidence, the deed itself is insufficient to pass title to the right of way, for it specifically states that the grant was made on condition that the railroad company fence the right of way as soon as the railroad was completed, and the undisputed evidence is that this condition was not complied with, and the railroad company did not attempt to fence until 1906, about twenty years after the completion of the railroad, and there is no evidence which would tend to show a waiver of the condition. We think that the circumstances surrounding the paper offered in evidence are such that the court was justified in refusing to admit it in evidence, either on the ground that appellant had not discharged the burden resting upon it of showing that the deed was genuine, or on the ground that if the deed was genuine, it would not show any title in appellant, and as *the decision of these questions is the decision of a question of fact,* we will not disturb the action of the trial court.

The court did not err in refusing to admit in evidence certain tax records from the auditor's office of Boone Coun-

ty, showing that during the three years prior to the

4. time appellee acquired his real estate the appellant had described for taxation the width of its right of way through said lands as sixty feet. Though a purchaser is held to constructive notice of certain records, such as deed and mortgage records, judgment records, and *lis pendens* records, he is not held to constructive notice of tax return records and appellant has not been able to show any authority to support its contention in this respect.

No error appears and the judgment is affirmed.

NOTE.—Reported in 107 N. E. 88. As to ancient deeds and when they are admissible, see 9 Am. St. 302. See, also, under (1) 17 Cyc. 443, 455; (3) 33 Cyc. 223; (4) 39 Cyc. 1703.